### SMYTH v. CALIFORNIA STATE AUTO-MOBILE ASS'N.

No. 12055.

United States Court of Appeals
Ninth Circuit.

June 22, 1949.

Rehearing Denied Aug. 8, 1949.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, James P. Garland and Sumner Redstone, Sp. Assts. to Atty. Gen., Frank J. Hennessy, U. S.

Atty., C. Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellant.

Arthur H. Deibert, Los Angeles, Cal., George E. Sandford, San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment denying to Smyth recovery of income taxes for the years 1943 and 1944 from California State Automobile Association, hereafter called the Association, and holding that it is a "club" exempted from income taxation under Section 101(9) of the Income Revenue Code, 26 U.S.C.A. § 101(9), providing:

"Sec. 101. Exemptions from tax on Corporations.

"The following organizations shall be exempt from taxation under this chapter—

"(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder."

Collector Smyth, as one of his grounds of appeal, contends the district court erred in its finding XI as follows:

"Plaintiff association was organized and operated exclusively for pleasure, recreation and other nonprofitable purposes during the years 1943 and 1944."

We agree with this contention, for the evidence of the Association's constitution and by-laws shows that at all times subsequent to 1929, including the years 1943 and 1944, it was "organized" to serve commercial as well as pleasure vehicles.

The articles of incorporation as amended in 1929 provide in the third paragraph of Article II for services to commercial automobiles as well as pleasure vehicles:

"That the purposes for which said corporation is formed are: * * *

"To furnish *advice, information* and *assistance* of all kinds to owners and operators of *self-propelled vehicles of all kinds operated on land* or sea or in the air and to establish and maintain offices, agencies and bureaus in said State and elsewhere for the purpose of collecting and disseminating *such information and rendering such service. * * *"* (Emphasis supplied.)

The by-laws provide for membership of all persons interested in the objects of the Association. That is, it includes owners of commercial auto vehicles to be served by the activities of the Association. Articles II and III of the by-laws provide:

"Article II.

"Purposes and Powers

"Section 1. The purposes and powers of this Association shall be those which are set forth in the Articles of Incorporation as now existing or as the same may be hereafter amended.

"Article III.

"Membership

"Section 1. *All persons* interested in the *objects of this Association* as hereinabove set forth shall be eligible to membership.

"Section 2. Similar Associations interested in the objects of this Association shall be eligible to membership." (Emphasis supplied.)

Nowhere in the amended articles of incorporation or by-laws is a restriction of its purposes to those of pleasure and recreation.

It is thus clear that the Association was not "organized * * * exclusively for pleasure and recreation and other [similar] nonprofitable purposes." It was "organized" in part for purely commercial purposes.

The Association is exempt from income taxation only if it is *both* "organized and operated" exclusively for non-commercial purposes. The evidence shows it is not entitled to the exemption.

While not necessary to the determination of the appeal, the evidence shows that while owners of trucks and commercial vehicles did not become members, membership is open to and made up of owners of *passenger cars* driven by capable drivers.

It may have been true that when the Association was organized in 1909, and even in 1914 when it was not taxed, pas-

senger cars were not used for commercial purposes.

■ The court takes judicial notice that it is inconceivable otherwise than that by the time of the amendment of 1929 many such cars were used by commercial agents of all kinds for travel in the course of their business and many more were used by laborers and others going to and from their places of business. By 1943 and 1944, when the Association had upwards of a hundred thousand members owning passenger cars, great numbers of such cars must have been served by the Association for purposes other than pleasure and recreation.

■ It further appears that in these two years a very large part of the Association's services were rendered for the prosecution of the war, a purpose completely alien to recreation.[1]

Such services to operators of auto-driven vehicles of the war agencies in these two years are expressly within the broad purposes of Article II, supra, of·the Association's constitution providing among its "purposes" those "to furnish advice, information and assistance of all kinds to * * * operators of self-propelled vehicles of all kinds operated on land * * *", Obviously, these services to such "opera-

tors" of government vehicles are for purposes other than "pleasure and recreation."

■ The Association contends that because such services as those to the war agencies are not shown to have produced a profit they fall within the phrase of Section 101(9), "exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder * * *." That is to say, any association of automobile users, if not yielding a profit to its members, is a "club" within Section 101(9). It would cover a nonprofit association solely to serve commercial agents using automobiles in carrying on their business in California, or to serve the hotels, garages and service stations actually served in prior years.

Such cannot be a proper interpretation, for it would render nugatory the statutory words "pleasure" and "recreation." The doctrine of ejusdem generis applies and nothing could be farther from ejusdem generis with pleasure and recreation than serving the grim purpose of waging war.

Great stress is laid on the fact that these non-recreational services are patriotic, but the exempting statute carries no exception of war services, and the fact that they cause the Association to pay a share of

---

[1] The Association's director and chairman of its executive committee, Mr. Kahn, testified that:

"While normally our activities were limited to serving our members, we undertook to serve all members of the armed forces who came into our territory in the matter of providing highway information, reservation service, and other services, and furnished the same services without cost to any person representing that they were coming into our territory seeking or having secured Government employment * * *

"We undertook without charge to train the volunteer drivers of the American Red Cross and the American Women's Volunteer Service. And beyond these things we voluntarily did, we actually had the Army come in and commandeer one entire floor of our building, and we housed them without knowing whether we would or would not receive compensation * * *

"I was trying to indicate, your Honor, that the type of activities in many cases were restricted because of war conditions and that we diverted equipment and man power from the recreational signing of our highways to the signing of highways for military purposes * * *.

"We continued to investigate and recommend places of lodging. We undertook to secure reservations for our members and members of the armed forces who were traveling in the area, reservations at those places which were difficult to obtain * * *."

Q. "To whom were these services rendered?"

Mr. Kahn: "Normally, sir, to the members of our Association, and members of affiliated clubs of the American Automobile Association. They were extended, as I stated previously, to members of the armed forces and the volunteer workers of the American Red Cross and volunteers of the AWVC, American Women's Volunteer Corps." (Emphasis supplied.)

the heavy war taxes of those years is not a matter of complaint for patriots. Indeed, here well may be used the language of Helvering v. Mountain Producers Corp., 303 U.S. 376, 384, 58 S.Ct. 623, 626, 82 L. Ed. 907, in overruling a group of prior tax decisions. "In the light of the expanding [war] needs of State and Nation" we are required to consider, as anew, the government's claim of the taxpayer's obligation. Cf. Oklahoma Tax Commission v. Texas Co., 336 U.S. 342, 69 S.Ct. 561.

The Association stresses the fact that, since income taxes were first imposed in 1913 up to 1943, it has not been taxed. It claims that this amounts to an administrative ruling we must consider. In the first sixteen years of that period, that is, from 1913 to 1929, the Association's articles contained no provision specifically extending its services to *all* automotive vehicles on land, and the failure to tax in that period well may be for that reason.

There is no evidence to show that the Treasury Department was advised by the Association of the amendment of 1929, which covers service to automotive vehicles whether or not used for pleasure and recreation. In support of this is the Association's brief, which quotes the purposes of the 1907 articles and fails to quote the 1929 amendment covering services to commercial vehicles. We may assume that the same oversight occurred in advising the Treasury Department. This seems the more certain since the Association's general manager since 1913, a Mr. Watkins, and the person to inform the Treasury of the 1929 amendment, testified:

"Q. Has there ever been any change in the type of your corporation as originally organized?

"A. No."

Nor is there evidence that the Association advised the Treasury that, prior to 1943, it had "special memberships to hotels, garages and road service stations" which, its brief admits, contributed to its income for its services to them. Certainly that income was used for a service other than exclusively for the pleasure and recreation provided in the exemption. Such use of income from non-pleasure and non-recrea-

tional *services,* contemplated by its constitution, is entirely different from the use of income for excepted purposes derived from *property held* exclusively to produce income *for* such excepted purposes.

The situation here is the reverse of such cases as Koon Kreek Klub v. Thomas, 5 Cir., 108 F.2d 616 and Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458, where the income derived from properties so held was used to serve the exempted purposes. These cases hold that it is the purpose *to which the income is devoted* which determines whether or not the exemption exists. Here prior to 1943 the income from all sources, including the hotels, garages and service stations, was used in part to serve their commercial purposes.

The Association is not a club exempted by Section 101(9) of the Internal Revenue Code. The judgment is reversed and the district court ordered to enter a judgment in favor of the appellant.