GEMOLOGICAL INSTITUTE OF AMER-
ICA, Inc., an Ohio corporation,
Plaintiff,

v.

Robert A. RIDDELL, Director of In-
ternal Revenue at Los Angeles,
California, Defendant.

No. 19795.

United States District Court
S. D. California,
Central Division.

Feb. 20, 1957.

Lillie & Bryant, by George M. Bryant, Los Angeles, Cal., and Anthony Bradisse, for plaintiff.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Chief, Tax Div., Los Angeles, Cal., by Robert H. Wyshak, Los Angeles, Cal., for defendant.

YANKWICH, Chief Judge.

The above-entitled cause heretofore tried, argued and submitted, is now decided as follows:

Upon the grounds stated in the comments to follow, Judgment will be for the defendant that plaintiff take nothing.

Formal Findings and Judgment to be prepared by counsel for the Government under Local Rule 7. West's Ann.Cal. Code.

### Comment.

**1. Relating To All Cases: Liability For Tax**

Separate actions have been brought by the plaintiff to recover alleged overpayment of income tax for the years from 1948 to 1954 as follows:

| Year | Amount |
|------|--------|
| 1948 | $ 9,880.01 |
| 1949 | 26,719.81 |
| 1950 | 16,003.64 |
| 1951 | 53,863.72 |
| 1953 | 20,314.31 |
| 1954 | 2,603.42 |

Some special issues are raised as to some of the years. These will be specifically referred to in Part III of each memorandum to be filed in the separate cases. See Appendix A, at end, for full findings in which the facts are set out more specifically.

The object of this memorandum, to be filed in this case and referred to in all others, is to determine whether the plaintiff is exempt from taxation for the year 1954 under Section 501(c) (3) of the 1954 Internal Revenue Code, 26 U.S. C.A. § 501(c) (3), and for the prior years under Section 101(6) of the 1939 Code, 26 U.S.C.A. § 101(6).

The basis for exemption is the claim that the institution was exempt as a non-profit institution "organized and operated exclusively for * * * educational purposes" under Section 101(6) of the 1939 Internal Revenue Code, and the similar provision of Section 501(c) (3) of the 1954 Internal Revenue Code. For the years 1944, 1945 and 1946, its character as such an institution was denied by the Tax Court, [See, Gemological Institute of America v. Commissioner, 1952, 17 T.C. 1604] the decision being affirmed in a *per curiam* memorandum by the Court of Appeals for the Ninth Circuit. See, Gemological Institute of America v. Commissioner of Internal Revenue, 9 Cir., 1954, 212 F.2d 205.

Without considering this decision as determinative of the issue as to the years before us, it is well to start with it in order to determine whether the character of the institution was changed in subsequent years. Before doing so, we advert to the fact that the Court of Appeals for the Ninth Circuit has declined to follow what is known as "the ultimate destination" of the taxpayer's profits as the test in these cases, as that test was laid down by the Court of Appeals for the Second Circuit in Roche's Beach, Inc., v. Commissioner of Internal Revenue, 2 Cir., 1938, 96 F.2d 776. To the contrary, they have held repeatedly and consistently that the existence of exemption is to be determined by the nature of the particular institution with the view to ascertain whether the institu-

tion was organized *exclusively* for educational purposes. Squire v. Students' Book Corp., 1951, 9 Cir., 191 F.2d 1018, 1020–1021; Ralph H. Eaton Foundation v. Commissioner of Internal Revenue, 9 Cir., 1955, 219 F.2d 527, 528–529; John Danz Charitable Trust v. Commissioner of Internal Revenue, 9 Cir., 1955, 231 F.2d 673, 676; Randall Foundation, Inc., v. Riddell, 9 Cir., —— F.2d ——. And see, United States v. Community Services, 4 Cir., 1951, 189 F.2d 421, the reasoning of which is approved in Ralph H. Eaton Foundation v. Commissioner of Internal Revenue, supra, 219 F.2d at page 529. See also, Wm. L. Powell Foundation v. Commissioner of Internal Revenue, 1953, 21 T.C. 279; Smyth v. California State Automobile Association, 9 Cir., 1949, 175 F.2d 752; Le Savoy Foundation v. Commissioner, 1956, 25 T.C. 924.

The nature of the corporation is described in the opinion in the Tax Court case. It has not been changed. It evidently conducts classes, sells books, of most of which the founder of the institution, Robert M. Shipley, is the author, has acquired patents to instruments which it sells to students and those interested in the science of gemmology. The only change which has occurred since the year 1946, is that an agreement was entered into by the plaintiff and Shipley on June 30, 1948, whereby, in lieu of the salary and of the 50 per cent of the profits provided in the previous agreement, he agreed to receive $19,000 per year. On March 29, 1952, this agreement was terminated and he was voted a special severance pay of $10,000 per year until a total of $60,000 was paid to him, the first payment on the execution of this agreement. In addition to this, he was to receive royalties upon the books published by him and on the instruments to which he had patents. He was to render no services in exchange for this severance pay, but he was not to engage in similar activities with others for five years. While the agreement recites that differences have arisen as to compensation, it is quite evident that the attempted change in relationship was motivated by the decision of the Tax Court dated two days before, March 27, 1952, declaring the corporation not to be an educational institution because of the diversion of a large percentage of its profits to an individual.

 Granted that the institution has graduated students who seek to maintain the high ethical standards of the gemmology profession, I am of the view that it cannot qualify as a non-profit institution *exclusively* engaged in educational purposes as those words are construed by the Court of Appeals for the Ninth Circuit in the decisions already cited. See also, Commissioner of Internal Revenue v. Orton, 6 Cir., 1949, 173 F. 2d 483. A good portion of its profits has always been, and were in the taxable years, devoted to the remuneration of Mr. Shipley. And, even considering the fact that, as of today, business executives are compensated in a munificent manner, the contracts entered into in 1948 and 1952, the first providing for the compensation at the rate of $19,000 a year plus royalties, and the other awarding him a retirement pay of $60,000 to be paid over a period of six years, were not mere contracts for excessive compensation, but were characteristic of an enterprise that is conducted as a commercial enterprise for the greater benefit of one person. The fact that well-meaning persons engaged in the jewelry trade like James G. Donavan and others who testified at the trial, served on the directorate without compensation does not deter from the fact that the educational activities were incidental to purely commercial objects, —the sale of books and instruments, ownership of property, patents, etc.,— and which included the fostering of better ethics in the jewelry profession. See, Better Business Bureau v. United States, 1949, 326 U.S. 279, 284, 66 S.Ct. 112, 90 L.Ed. 67. Concededly a taxpayer may change the nature of his operation in order to receive the benefit of tax exemptions. And it was within the power of the corporation to change its articles of organization and conform, both

in their declaration of corporate aims and activities, exclusively to educational purposes henceforth. They did not choose to do so. And I am of the view that the change in the contracts between them and Shipley were not sufficient to amount to a repudiation of the purposes set forth in the articles of incorporation and in the activities engaged in these long years. See, Helvering v. Coleman-Gilbert Associates, 1935, 296 U.S. 369, 374, 56 S.Ct. 285, 80 L.Ed. 278; Buckley v. Commissioner of Internal Revenue, 2 Cir., 1956, 231 F.2d 204. This rule of interpretation in tax cases has the approval of our Court of Appeals. See, Title Ins. & Trust Co. v. Commissioner of Internal Revenue, 9 Cir., 1938, 100 F.2d 482, 485.

II. Relating To All Cases Except 19795–Y (1954): Liability For Penalty

Section 291(a) of the Internal Revenue Code of 1939 provided:

"In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure *is due to reasonable cause and not due to willful neglect*, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612(d)(1)." 26 U.S.C. 1952 Ed., § 291.

■ Assessment of the maximum of 25 per cent penalty was made as to all the years involved except the year 1954. All the tax returns for the years prior to 1955 were filed in 1954 with simultan-

eous claims for refund. Ordinarily, the finding of neglect under provisions of this character under this and other tax Acts is considered purely an administrative act which will not be disturbed. Bothwell v. Commissioner of Internal Revenue, 10 Cir., 1935, 77 F.2d 35, 39; Gouldman v. Commissioner of Internal Revenue, 4 Cir., 1948, 165 F.2d 686, 690.

■ However, I am of the view that in the cases before us, the failure to file was not due to "willful neglect" but rather was due to "reasonable cause". See, Hatfried, Inc., v. Commissioner of Internal Revenue, 3 Cir., 1947, 162 F.2d 628, 635; Orient Investment & Finance Co. v. Commissioner of Internal Revenue, 1948, 83 U.S.App.D.C. 74, 166 F.2d 601, 604, 3 A.L.R.2d 612. The taxpayer, over a period of years, under the advice of competent legal tax counsel, has contested the right to impose on it liability for tax. After the decisions made against it in the Tax Court as to the years 1944, 1945 and 1946, heretofore referred to, attempts were made to remedy the situation by changing the relationship between Mr. Shipley and the taxpayer. While, as stated above, I am of the view that the resulting agreements entered into did not change the nature of the corporation and so find, nevertheless, I am satisfied by the evidence in the record that the officers of the corporation acted upon reasonable grounds in believing, after the case as to some of the years went against them, that it could establish a status of non-profit corporation established and conducted exclusively for educational purposes.

■■ Neglect or negligence in law means the doing of an act which a reasonable and prudent person would not do under the circumstances or the failure to do what a reasonable and prudent person would do under the circumstances. It may consist of omission, inaction or nonaction. Willful neglect implies doing or failing to do an act, being conscious that such conduct will result in injury.

■ Willfulness in a case involving a tax penalty, implies an act which is in-

tentional, knowing or voluntary, the doing or failure to do a thing without ground for believing it to be lawful or "conduct marked by careless disregard whether or not one has the right so to act." United States v. Murdock, 1933, 290 U.S. 389, 395, 54 S.Ct. 223, 225, 78 L.Ed. 381. This was not the case here. There was no concealment of facts or activities in order to excuse failure to make returns. The corporation was doing business in the open. All its activities could be verified. Its books were kept and audited according to proper accounting methods. The failure of the corporation to pay the tax was not the result of "willful neglect" as the phrasing is in the 1939 Code, but the result of conviction on the part of its officers, based on the advice of reputable tax counsel, and which they have maintained to the present day, that they were not subject to income tax. In the circumstances, and assuming that the imposition of the penalty implies a finding of willful neglect on the part of the Commissioner, it is an erroneous legal conclusion not justified by the undisputed facts. See Commissioner of Internal Revenue v. Scottish American Investment Co., 1944, 323 U.S. 119, 124, 65 S.Ct. 169, 89 L.Ed. 113.

Hence the ruling above made.

(Appendix A)

Findings of Fact, Conclusions of Law and Judgments.

The above-entitled matters having been consolidated and come on regularly for trial before the Honorable Leon R. Yankwich, Chief Judge, presiding without a jury, the plaintiff represented by its attorneys Lillie and Bryant, by George M. Bryant and Anthony Bradisse, and the defendant by his attorneys, Laughlin E. Waters, United States Attorney, Edward R. McHale, Assistant United States Attorney, Chief, Tax Division, Robert H. Wyshak, Assistant United States Attorney, and the Court having considered the evidence both oral and documentary and the stipula-

tion in open court that any deficiencies in tax resulting from the Court's rulings could be recouped from any overpayments, makes its findings of fact and conclusions of law as follows:

Findings of Fact

I

These actions were brought by the plaintiff to recover alleged overpayments of federal corporate income taxes for the years 1948 through 1954 on the ground that the plaintiff is exempt from taxation for the year 1954 under Section 501(c) (3) of the 1954 Internal Revenue Code and for the years prior thereto under Section 101(6) of the 1939 Internal Revenue Code as follows:

| Year | Docket | Amount |
| --- | --- | --- |
| 1948 | #20156–Y | $ 9,880.01 |
| 1949 | #20157–Y | $26,719.81 |
| 1950 | #20158–Y | $16,003.64 |
| 1951 | #20159–Y | $43,863.72 |
| 1953 | #20160–Y | $20,314.31 |
| 1954 | #19795–Y | $ 2,603.42 |

II

The plaintiff is an Ohio corporation organized October 8, 1942, with its principal place of business located in Los Angeles, California.

III

In 1931 a venture known as the Gemological Institute of America was formed by Robert M. Shipley and his wife for the purpose of offering courses of instruction in the science of gemmology and related subjects. This venture was the outgrowth of his prior business activity, which included work in the retail jewelry business and retail jewelry trade associations. The venture was organized and operated under the sponsorship of jewelers located throughout the United States. The policies of the venture were directed by a board of governors, elected by and from the sponsoring jewelers. The amount of income withdrawn by the Shipleys for their personal use was controlled by the board of governors. From 1931 to 1943, Shipley's salary from the

Institute averaged $275 per month and his wife's averaged $165 per month.

During World War II enrollment in the Institute fell off and in order to insure its perpetuation the American Gem Society, many of whose members were graduates and students of the Institute, raised an endowment fund in excess of $60,000. With the raising of this fund, it was deemed proper "to form a corporation, not for profit," and the plaintiff was thereupon organized under the laws of the State of Ohio.

### IV

On June 30, 1943, Shipley sold the good will of the Institute to the plaintiff corporation for $4,000. The agreement of sale provided that Shipley would become executive-director of the plaintiff. Two other agreements were executed simultaneously with the agreement of sale, under one of which Shipley was to receive $375 per month as executive-director for three years. The second agreement provided that he was to receive 50 per cent of the net amount received from the operation of the business, but if the payment of said 50 per cent should result in the loss of exemption to the corporation, then he was to receive a royalty or commission upon the business transacted by the plaintiff in an amount approximating said 50 per cent. Pursuant to this supplemental agreement Shipley received, in addition to his annual salary of $4,500, half the taxpayer's net income during the years 1944, 1945 and 1946. His share of the profits during these years respectively was $7,651.37, $11,837.30, and $18,128.18.

### V

The plaintiff agreed as of June 30, 1948 to cancel the agreement whereby Shipley was to receive 50 per cent of the net amount received from the operation of the business and agreed to compensate him thereafter on a salary basis. The compensation received by him under this agreement was $7,500 for the period July 1 through December 31, 1948, $19,000 per year for the years 1949 through 1951, and $4,750 for the first quarter of 1952.

### VI

On March 31, 1952 Shipley's employment with the plaintiff was terminated pursuant to an agreement dated March 29, 1952. This agreement provided for the payment to Shipley of $10,000 per year until a total of $60,000 was paid to him, in addition to certain royalty payments relating to instruments, books and other publications by Shipley, which were advertised and sold by the plaintiff. He was to render no services in exchange for this severance pay but he agreed not to compete or accept employment in competition with plaintiff for a period of five years. Only on default could the whole balance become due in any one year.

### VII

Over the period 1944–1954 Shipley received approximately $20,000 a year from plaintiff.

### VIII

During this time the plaintiff's activities were in large part conducted in the same fashion as the venture by Shipley and his wife prior to incorporation, viz. classes were conducted in the science of gemmology, books and other publications in large part authored by Shipley were sold, instruments patented either by Shipley, his son, or the plaintiff were sold both to students and the public and gemstones were analyzed for a fee for anyone.

### IX

The articles of incorporation of the plaintiff provided in part that the purpose for which the corporation was formed was: To generally promote a high standard of ethics among dealers and persons interested in gems, gem minerals, metals and jewelry; and to deal in patents, trademarks and similar rights that may be useful in connection with any activity the corporation was authorized to carry on. The plaintiff was not organized exclusively for educational purposes within the meaning of § 101(6) of the 1939 Internal Revenue Code or § 501(c) (3) of the 1954 Internal Revenue Code.

## X

During the years 1948–1952, inclusive, and 1954 the plaintiff was conducted as a commercial enterprise for the greater benefit of one person, Shipley. A substantial part of the plaintiff's net earnings inured to his benefit.

## XI

The plaintiff was not operated exclusively for educational purposes within the meaning of § 101(6) of the 1939 Internal Revenue Code during 1948–1952, inclusive, or § 501(c) (3) of the 1954 Internal Revenue Code during 1954.

## XII

On July 20, 1954 the plaintiff tendered a check for $84,894.02 to the District Director of Internal Revenue at Los Angeles without specifying to what assessments it should be credited. The District Director properly credited said check toward assessments for the following years:

| Years | Income Tax |
|-------|-----------|
| 1948 | $ 1,777.08 |
| 1949 | $26,719.81 |
| 1950 | $16,003.64 |
| 1951 | $40,483.49 |

## XIII

After having been served with notices and demands to pay the balance of outstanding taxes, delinquency penalties and interest assessed for said periods, the plaintiff tendered on September 20, 1954, a check for $38,999.10 without specifying to which assessments it should be credited. The District Director properly credited it as follows:

| Year | Tax | 25% Delinquency Penalty | Interest |
|------|-----|------------------------|----------|
| 1948 | | | $ 570.12 |
| 1949 | | $6,679.95 | $6,367.87 |
| 1950 | | $4,000.91 | $2,901.78 |
| 1951 | $3,380.23 | $9,633.45 | $5,464.79 |

## XIV

The taxes of $2,603.42 for the calendar year 1954 were timely paid on March 15, 1955.

## XV

### 1948

a) On November 25, 1955 the plaintiff filed a claim for refund for the taxes, penalties and interest paid for said year on the ground that it was tax-exempt under Section 101(6) of the 1939 Code and that the delinquency in filing returns was caused by reliance on the advice of counsel and upon the taxpayer's contention that it was exempt. During the trial the plaintiff waived in open court its claim for overpayment of the income taxes.

b) The plaintiff first filed a form 1120 corporate income tax return for the year 1948 reporting income, deductions and tax of $8,102.93 on July 20, 1954. A 25% delinquency penalty of $2,025.73 was then assessed and paid October 20, 1954. The delinquency penalty under Section 291(a) of the 1939 Internal Revenue Code was improperly imposed, since the officers of the corporation acted upon reasonable grounds in believing that the plaintiff could establish the status of a non-profit corporation organized and operated exclusively for educational purposes. The plaintiff had attempted to secure exempt status for the years 1944, 1945 and 1946 before the Tax Court which resulted in an adverse decision on March 29, 1952. This decision was affirmed by the Court of Appeals for the Ninth Circuit, Gemological Institute of America v. Commissioner of Internal Revenue, 1954, 212 F.2d 205. In September, 1952 the plaintiff was advised by competent legal tax counsel that it was entitled to exemption after June 30, 1948. In January 1954, said counsel advised the filing of regular corporation returns for the years 1948 to 1952. The failure of the corporation to report timely its tax liability was not the result of willful negligence.

### 1949

c) On November 25, 1955 the plaintiff filed a claim for refund for the year 1949 alleging the same grounds as were set forth in the claim for the year 1948 hereinabove mentioned.

d) The plaintiff first filed a form 1120 corporate income tax return for the year 1949 reporting income, deductions and tax owing of $26,719.81 on July 20, 1954. A 25% delinquency penalty of $6,679.95 was then assessed and paid on September 20, 1954. The delinquency penalty imposed under Section 291(a) of the 1939 Internal Revenue Code was improperly imposed for the aforementioned reasons in paragraph XV(b) herein.

### 1950

e) On November 25, 1955 the plaintiff filed a claim for refund for the year 1950 alleging the same grounds as were set forth in the claim filed for the year 1948 hereinabove mentioned.

f) The plaintiff first filed a form 1120 corporate income tax return for the year 1950 reporting income, deductions and tax owing of $16,003.64 on July 20, 1954. A 25% delinquency penalty of $4,000.91 was then assessed and paid September 20, 1954. The 25% delinquency penalty imposed under Section 291(a) of the 1939 Internal Revenue Code was improperly imposed for the aforementioned reasons in paragraph XV(b) herein.

### 1951

g) On November 25, 1955 the plaintiff filed a claim for refund for the year 1951 alleging the same grounds as were set forth in the claim filed for the year 1948 hereinabove mentioned. Prior thereto, on July 20, 1954, the plaintiff had filed a claim for refund for the year 1951 alleging a net operating loss carryback from the year 1952. This claim does not constitute payment of the assessed tax liability. There was no net operating loss in the year 1952.

h) The plaintiff first filed a form 1120 corporate income tax return for the year 1951 reporting income, deductions and tax owing of $43,863.72 on July 20, 1954.

A 25% delinquency penalty of $10,965.93 was then assessed and $9,633.45 paid on September 20, 1954. The 25% penalty imposed under Section 291(a) of the 1939 Internal Revenue Code was improper for the aforementioned reasons in paragraph XV(b) herein.

### 1952

i) On July 20, 1954 the plaintiff filed a form 1120 corporate income tax return, reporting an operating loss of $38,-545.32. The plaintiff improperly deducted as accrued its $50,000 contingent liability to Shipley under the agreement entered into March 29, 1952. It could only accrue and deduct its liability therefor as its liability became fixed and definite each year to the extent of $10,-000, in view of the fact that the liability was contingent on Shipley's covenant not to compete.

j) The plaintiff had a taxable net income for the year 1952 of $11,454.68 on which there is a deficiency in tax of $3,436.40 due, owing, and unpaid.

### 1953

k) On November 25, 1955 the plaintiff filed a claim for refund for the year 1953 alleging the same grounds as are set forth in the claim for refund filed for the year 1948 hereinabove mentioned.

l) The plaintiff first filed a form 1120 corporate income tax return for the year 1953 reporting income, deductions and tax owing of $20,314.31 on July 20, 1954. However, there have been no payments or credits to said liability and the claim for refund is premature and of no effect. Nor does it constitute a claim for abatement, since they are specifically prohibited by statute, Section 273(j), Internal Revenue Code of 1939, 26 U.S.C.A. § 273(j).

### 1954

m) On March 15, 1955 the plaintiff filed a claim for refund for the year 1954 alleging that it was exempt as an educational institution and at the same time paid its reported tax liability of $2,603.-42 on a reported net income of $8,678.06.

136

Said net income was understated by $30,-000 on account of a duplicate deduction of an accrual of the unpaid balance due Shipley as of 1954 under the aforementioned agreement of March 29, 1952. The taxable net income for 1954 was $38,678.06, resulting in a deficiency in tax for the year 1954 of $12,009.17 due, owing, and unpaid.

## XVI

Every conclusion of law deemed to be a finding of fact is hereby found as a fact and incorporated herein.

## Conclusions of Law

### I

This Court has jurisdiction of the parties and of the subject matter with respect to all years except the year 1953.

### II

The Court does not have jurisdiction in the suit for refund of taxes alleged to have been illegally collected, Docket No. 20160–Y, for the year 1953, where no payments or credits have been made against the tax liability for that year.

### III

The plaintiff was not organized exclusively or operated exclusively for an educational purpose during the years 1948–1952, inclusive, within the meaning of Section 101(6) of the 1939 Internal Revenue Code or for the year 1954 within the meaning of Section 501(c) (3) of the 1954 Internal Revenue Code.

### IV

The plaintiff is not entitled to exemption from federal income taxation for the years 1948–1952, inclusive, under Section 101(6) of the 1939 Internal Revenue Code or for the year 1954 under Section 501(c) (3) of the 1954 Internal Revenue Code.

### V

The plaintiff had reasonable cause for not filing timely corporate income tax returns for the years 1948–1952, inclusive.

The 25% delinquency penalty under Section 291(a) of the 1939 Internal Revenue Code was improperly imposed for the years 1948–1951, inclusive.

### VI

The plaintiff may not deduct as accrued for the year 1952 the $50,000 contingent liability to Shipley, payable $10,000 per year under the agreement entered into March 29, 1952, since liability therefor was contingent on Shipley's covenant not to compete. The liability may be accrued and deducted as it becomes fixed and definite each year and as the $10,000 annual amount becomes payable.

### VII

Every finding of fact deemed to be a conclusion of law is hereby concluded as a matter of law and incorporated herein.

### VIII

The plaintiff has overpaid and underpaid its tax liability for the years 1948–1952 and 1954 with interest as provided by law from the dates set forth as follows:

| Year | Overpayment | Underpayment | Date |
|------|------|------|------|
| 1948 | $2,025.73 | | 10/20/54 |
| 1949 | $6,679.95 | | 9/20/54 |
| 1950 | $4,000.91 | | 9/20/54 |
| 1951 | $9,633.45 | | 9/20/54 |
| 1952 | | $ 3,436.40 | 3/15/53 |
| 1954 | | $12,009.17 | 3/15/55 |

### IX

The plaintiff is entitled to judgment for the net amount thereof together with interest as provided by law and for its costs in Docket Nos. 20156–Y, 20157–Y, 20158–Y and 20159–Y to be taxed by the Clerk of this Court.

### X

The defendant is entitled to judgment against the plaintiff dismissing the complaint with prejudice in Docket No. 19795–Y and without prejudice in Docket No. 20160–Y, and for his costs in said

actions to be taxed by the Clerk of this Court.

### Judgments and Certificates of Probable Cause

In accordance with the foregoing findings of fact and conclusions of law, it is hereby ordered, adjudged, decreed, and certified:

I. That the plaintiff has overpaid its tax liability for 1948 in the sum of $2,025.73, for 1949 in the sum of $6,679.95, for 1950 in the sum of $4,000.91, for 1951 in the sum of $9,633.45; and underpaid its corporate income taxes for 1952 in the sum of $3,436.40, and for 1954 in the sum of $12,009.17; and that the plaintiff have judgment on Docket Nos. 20156–Y, 20157–Y, 20158–Y and 20159–Y as follows:

1) for $6,894.47;

2) together with interest as provided by law
 a) on $2,025.73 from October 20, 1954,
 b) on $6,679.95 from September 20, 1954,
 c) on $4,000.91 from September 20, 1954,
 d) on $9,633.45 from September 20, 1954,

3) less interest as provided by law
 a) on $3,436.40 from March 15, 1953,
 b) and on $12,009.17 from March 15, 1955;

4) together with its costs in Docket Nos. 20156–Y, 20157–Y, 20158–Y, and 20159–Y in the sum of $——— to be taxed by the Clerk of this Court.

II. That there was probable cause for the acts of the defendant Robert A. Riddell in collecting said monies and paying same into the Treasury of the United States.

III. That the plaintiff take nothing in Docket Nos. 19795–Y, and 20160–Y, that the complaint be dismissed with prejudice in Docket No. 19795–Y and without prejudice in Docket No. 20160–Y and that the defendant have judgment for and shall recover from plaintiff the amount of defendant's costs in Docket Nos. 19795–Y and 20160–Y, to be taxed by the Clerk of this Court in the sum of $———.