## AUTOMOBILE CLUB OF MICHIGAN *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 89.  Argued March 6–7, 1957.—Decided April 22, 1957.

*Ellsworth C. Alvord* and *Raymond H. Berry* argued the cause for petitioner. With them on the brief were *A. H. Moorman* and *Lincoln Arnold*.

*John N. Stull* argued the cause for respondent. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice, I. Henry Kutz* and *Joseph F. Goetten*.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

In 1945, the Commissioner of Internal Revenue revoked his 1934 and 1938 rulings exempting the petitioner from federal income taxes, and retroactively applied the revocation to 1943 and 1944. The Commissioner also determined that prepaid membership dues received by the petitioner should be taken into income in the year received, rejecting the petitioner's method of reporting as income only that part of the dues as was recorded on petitioner's books as earned in the tax year. The Tax Court sustained the Commissioner's determinations,[1] and

---

[1] 20 T. C. 1033.

the Court of Appeals for the Sixth Circuit affirmed.[2] This Court granted certiorari.[3]

The Commissioner had determined in 1934 that the petitioner was a "club" entitled to exemption under provisions of the internal revenue laws corresponding to § 101 (9) of the Internal Revenue Code of 1939,[4] notifying the petitioner that ". . . future returns, under the provisions of section 101 (9) . . . will not be required so long as there is no change in your organization, your purposes or methods of doing business." In 1938, the Commissioner confirmed this ruling in a letter stating: ". . . as it appears that there has been no change in your form of organization or activities which would affect your status the previous ruling of the Bureau holding you to be exempt from filing returns of income is affirmed . . . ." Accordingly the petitioner did not pay federal taxes from 1933 to 1945. The Commissioner revoked these rulings in 1945, however, and directed the petitioner to file returns for 1943 and subsequent years.[5] Pursuant to this

[2] 230 F. 2d 585.

[3] 352 U. S. 817.

[4] Section 101 (9) provided as follows:

"The following organizations shall be exempt from taxation under this chapter—

.        .        .        .        .

"(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder . . . ." 53 Stat. 33, 26 U. S. C. (1934 ed., Supp. V) § 101 (9).

The earlier statute sections were identical to the 1939 section. 52 Stat. 480 (1938); 49 Stat. 1673 (1936); 48 Stat. 700 (1934); 47 Stat. 193 (1932).

[5] The letter of revocation stated that in order to qualify as a club under § 101 (9), the ". . . organization should be so composed and its activities be such that fellowship among the members plays a material part in the life of the organization . . . ." It was then stated that the previous rulings were revoked because "[t]he evidence submitted

direction, the petitioner filed, under protest, corporate income and excess profits tax returns for 1943, 1944 and 1945.

The Commissioner's earlier rulings were grounded upon an erroneous interpretation of the term "club" in § 101 (9) and thus were based upon a mistake of law. It is conceded that in 1943 and 1944 petitioner was not, in fact or in law, a "club" entitled to exemption within the meaning of § 101 (9), and also that petitioner is subject to taxation for 1945 and subsequent years.[6] It is nevertheless contended that the Commissioner had no power to apply the revocation retroactively to 1943 and 1944, and that, in any event, the assessment of taxes against petitioner for 1943 and 1944 was barred by the statute of limitations.

The petitioner argues that, in light of the 1934 and 1938 rulings, the Commissioner was equitably estopped from applying the revocation retroactively. This argument is without merit. The doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law.[7] The decision in *Stockstrom* v. *Commis-*

---

shows that fellowship does not constitute a material part of the life of . . . [petitioner's] organization and that . . . [petitioner's] principal activity is the rendering of commercial services to . . . [its] members."

[6] Petitioner renders various services for its members. Among these are emergency road service when a car is disabled; furnishing maps, road and other travel information; and publishing a monthly magazine containing news of travel and of laws pertaining to the use of automobiles.

[7] *Keystone Auto. Club* v. *Commissioner*, 181 F. 2d 402; *Schafer* v. *Helvering*, 65 App. D. C. 292, 83 F. 2d 317, aff'd, 299 U. S. 171; *John M. Parker Co.* v. *Commissioner*, 49 F. 2d 254; *Southern Maryland Agricultural Fair Assn.* v. *Commissioner*, 40 B. T. A. 549; *Yokohama Ki-Ito Kwaisha, Ltd.*, 5 B. T. A. 1248; see also, *Chattanooga Auto. Club* v. *Commissioner*, 182 F. 2d 551 (by implication); *Warren Auto. Club* v. *Commissioner*, 182 F. 2d 551 (by implication); *Smyth* v. *California State Auto. Assn.*, 175 F. 2d 752 (by implication); *Automobile Club of St. Paul* v. *Commissioner*, 12 T. C. 1152 (by implication).

*sioner,* 88 U. S. App. D. C. 286, 190 F. 2d 283, to the extent that it holds to the contrary, is disapproved.

Petitioner's reliance on *H. S. D. Co.* v. *Kavanagh,* 191 F. 2d 831, and *Woodworth* v. *Kales,* 26 F. 2d 178, is misplaced because those cases did not involve correction of an erroneous ruling of law. Reliance on *Lesavoy Foundation* v. *Commissioner,* 238 F. 2d 589, is also misplaced because there the court recognized the power in the Commissioner to correct a mistake of law, but held that in the circumstances of the case the Commissioner had exceeded the bounds of the discretion vested in him under § 3791 (b) of the 1939 Code.[8]

The Commissioner's action may not be disturbed unless, in the circumstances of this case, the Commissioner abused the discretion vested in him by § 3791 (b) of the 1939 Code. That section provides:

"RETROACTIVITY OF REGULATIONS OR RULINGS.— The Secretary, or the Commissioner with the approval of the Secretary, may prescribe the extent, if any, to which any ruling, regulation, or Treasury Decision, relating to the internal revenue laws, shall be applied without retroactive effect."

The petitioner contends that this section forbids the Commissioner taking retroactive action. On the contrary, it is clear from the language of the section and its legislative history [9] that Congress thereby confirmed the authority of the Commissioner to correct any ruling, regulation or Treasury decision retroactively, but empowered him, in his discretion, to limit retroactive application to the extent necessary to avoid inequitable results.

The petitioner, citing *Helvering* v. *Reynolds Co.,* 306 U. S. 110, argues that resort by the Commissioner to

---

[8] 53 Stat. 467, 26 U. S. C. § 3791 (b).

[9] H. R. Rep. No. 704, 73d Cong., 2d Sess. 38; S. Rep. No. 558, 73d Cong., 2d Sess. 48.

§ 3791 (b) was precluded in this case because the repeated re-enactments of § 101 (9) gave the force of law to the provision of the Treasury regulations relating to that section. These regulations provided that when an organization had established its right to exemption it need not thereafter make a return of income or any further showing with respect to its status unless it changed the character of its operations or the purpose for which it was originally created.[10] *Helvering* v. *Reynolds Co.* is inapplicable to this case. As stated by the Tax Court: "The regulations involved there [*Helvering* v. *Reynolds Co.*] . . . purported to determine what did or did not constitute gain or loss. The regulations here . . . in nowise purported to determine whether any organization was or was not exempt." [11] These regulations did not provide the exemption or interpret § 101 (9), but merely specified the necessary information required to be filed in order that the Commissioner might rule whether or not the taxpayer was entitled to exemption. This is thus not a case of ". . . administrative construction embodied in the regulation[s] . . ." which, by repeated re-enactment of § 101 (9), ". . . Congress must be taken to have approved . . . and thereby to have given . . . the force of law." *Helvering* v. *Reynolds Co.,* 306 U. S., at 114, 115.

We must, then, determine whether the retroactive action of the Commissioner was an abuse of discretion in the circumstances of this case. The action was the consequence of the reconsideration by the Commissioner, in 1943, of the correctness of the prior rulings exempting automobile clubs, initiated by a General Counsel Memorandum interpreting § 101 (9) to be inapplicable to such organizations.[12] The Commissioner adopted the General

---

[10] Treas. Reg. 86, Art. 101–1 (1934); Treas. Reg. 94, Art. 101–1 (1936); Treas. Reg. 103, § 19.101–1 (1939).

[11] 20 T. C., at 1041.

[12] G. C. M. 23688, 1943 Cum. Bull. 283.

Counsel's interpretation and proceeded to apply it, effective from 1943, indiscriminately to automobile clubs.[13] We thus find no basis for disagreeing with the conclusion, reached by both the Tax Court and the Court of Appeals, that the Commissioner, having dealt with petitioner upon the same basis as other automobile clubs, did not abuse his discretion. Nor did the two-year delay in proceeding with the petitioner's case, in these circumstances, vitiate the Commissioner's action.

The petitioner's contention that the statute of limitations barred the assessment of deficiencies for 1943 and 1944 is also without merit. Its returns for those years were not filed until October 22, 1945. Within three years, on August 25, 1948, the petitioner and the Commissioner signed consents extending the period to June 30, 1949. The period was later extended to June 20, 1950. Notice of deficiencies was mailed to petitioner on February 20, 1950. The assessments were therefore within time under §§ 275 (a) and 276 (b) [14] unless, as the peti-

---

[13] See, e. g., *Chattanooga Auto. Club* v. *Commissioner*, 182 F. 2d 551; *Warren Auto. Club* v. *Commissioner*, 182 F. 2d 551; *Keystone Auto. Club* v. *Commissioner*, 181 F. 2d 402; *Smyth* v. *California State Auto. Assn.*, 175 F. 2d 752; *Automobile Club of St. Paul* v. *Commissioner*, 12 T. C. 1152.

[14] Section 275 (a) provides as follows:

"Except as provided in section 276—

"(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period." 53 Stat. 86, 26 U. S. C. § 275 (a).

Section 276 (b) provides as follows:

"(b) WAIVER.—Where before the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration

tioner asserts, the statute of limitations began to run from the dates when, if there was a duty to file, the statute required filing.[15]   The petitioner argues that because its omission to file on March 15, 1944, and March 15, 1945, was induced by the Commissioner's 1934 and 1938 rulings, it is only equitable to interpret the statute of limitations as running from those dates in the circumstances of this case.   But the express condition prescribed by the Congress was that the statute was to run against the United States from the date of the actual filing of the return, and no action of the Commissioner can change or modify the conditions under which the United States consents to the running of the statute of limitations against it. In *Lucas* v. *Pilliod Lumber Co.*, 281 U. S. 245, 249, this Court held:

> "Under the established general rule a statute of limitation runs against the United States only when they assent and upon the conditions prescribed. Here assent that the statute might begin to run was conditioned upon the presentation of a return duly sworn to.   No officer had power to substitute something else for the thing specified. . . ."[16]

It is also argued that the Form 990 returns filed by the petitioner in compliance with § 54 (f) of the 1939 Code, as amended,[17] constituted the filing of returns for the pur-

---

of the period agreed upon.   The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."   53 Stat. 87, 26 U. S. C. § 276 (b).

[15] The 1943 tax return was due on March 15, 1944.   The 1944 tax return was due on March 15, 1945.

[16] To the extent that the decision in *Balkan Nat. Ins. Co.* v. *Commissioner*, 101 F. 2d 75, is to the contrary, it is disapproved.

[17] 53 Stat. 28, as amended, 58 Stat. 36, 26 U. S. C. § 54 (f).

poses of § 275 (a). But the Form 990 returns are merely information returns in furtherance of a congressional program to secure information useful in a determination whether legislation should be enacted to subject to taxation certain tax-exempt corporations competing with taxable corporations.[18] Those returns lack the data necessary for the computation and assessment of deficiencies and are not therefore tax returns within the contemplation of § 275 (a). Cf. *Commissioner* v. *Lane-Wells Co.*, 321 U. S. 219.

The final issue argued concerns the treatment of membership dues and arises because such dues are paid in advance for one year. The dues upon collection are deposited in a general bank account and are not segregated from general funds but are available and are used for general corporate purposes. For bookkeeping purposes, however, the dues upon receipt are credited to an account carried as a liability account and designated "Unearned Membership Dues." During the first month of membership and each of the following eleven months one-twelfth of the amount paid is credited to an account designated "Membership Income." This method of accounting was followed by petitioner from 1934. The income from such dues reported by petitioner in each of its tax returns for 1943 through 1947 was the amount credited in the year to the "Membership Income" account. The Commissioner determined that the petitioner received the prepaid dues under a claim of right, without restriction as to their disposition, and therefore the entire amount received in each year should be reported as income. The Commissioner relies upon *North American Oil* v. *Burnet*, 286 U. S. 417, 424, where this Court said: "If a taxpayer receives earnings under a claim of right

---

[18] H. R. Rep. No. 871, 78th Cong., 1st Sess. 24–25; S. Rep. No. 627, 78th Cong., 1st Sess. 21.

and without restriction as to its disposition, . . . [it] has received income which . . . [it] is required to return . . . ."

The petitioner does not deny that it has the unrestricted use of the dues income in the year of receipt, but contends that its accrual method of accounting clearly reflects its income, and that the Commissioner is therefore bound to accept its method of reporting membership dues. We do not agree. Section 41 of the Internal Revenue Code of 1939 required that "[t]he net income shall be computed . . . in accordance with the method of accounting regularly employed in keeping the books . . . but . . . if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. . . ."[19] The pro rata allocation of the membership dues in monthly amounts is purely artificial and bears no relation to the services which petitioner may in fact be called upon to render for the member.[20] Section 41 vests the Commissioner with discretion to determine whether the petitioner's method of accounting clearly reflects income. We cannot say, in the circumstances here, that the discretionary

---

[19] 53 Stat. 24, 26 U. S. C. § 41.

[20] *Beacon Publishing Co.* v. *Commissioner*, 218 F. 2d 697, and *Schuessler* v. *Commissioner*, 230 F. 2d 722, are distinguishable on their facts. In *Beacon*, performance of the subscription, in most instances, was, in part, necessarily deferred until the publication dates after the tax year. In *Schuessler*, performance of the service agreement required the taxpayer to furnish services at specified times in years subsequent to the tax year. In this case, substantially all services are performed only upon a member's demand and the taxpayer's performance was not related to fixed dates after the tax year. We express no opinion upon the correctness of the decisions in *Beacon* or *Schuessler*.

action of the Commissioner, sustained by both the Tax Court and the Court of Appeals, exceeded permissible limits. See *Brown* v. *Helvering,* 291 U. S. 193, 204–205.

*Affirmed.*

MR. JUSTICE WHITTAKER took no part in the consideration or decision of this case.

MR. JUSTICE BURTON, whom MR. JUSTICE CLARK joins, concurring in part and dissenting in part.

I join in the Court's opinion insofar as it holds (a) that the Commissioner did not abuse his discretion under § 3791 (b) of the Internal Revenue Code of 1939 when, in 1946, he revoked previous rulings exempting petitioner from federal income taxes and directed petitioner to file returns for 1943 and 1944, and (b) that assessment of deficiencies for those years was not barred by the statute of limitations. However, for the reasons stated by MR. JUSTICE HARLAN, I dissent from the Court's holding that the Commissioner acted within his discretion under § 41 of the Internal Revenue Code of 1939 when he determined, in reliance upon the "claim of right" doctrine, that petitioner's method of accounting for prepaid membership dues did not clearly reflect its income.

MR. JUSTICE HARLAN, dissenting.

I think collection of the 1943 and 1944 taxes, based on the Commissioner's retroactive revocation of his 1934 and 1938 exemption rulings, was barred by the three-year statute of limitations.[1]  I would hold that the limitations period began to run when the taxpayer, relying on the exemption ruling, duly filed its Form 990 returns [2] for the years 1943 and 1944.  I see no reason why we should

[1] 53 Stat. 86, 26 U. S. C. § 275 (a).

[2] 58 Stat. 36, 26 U. S. C. § 54 (f).

strain to construe "return" in § 275 (a) as excluding an information return when such a return was the only one required of this taxpayer, exempt from taxation at the time, and especially when that construction produces the inequitable consequences which have resulted here. Section 275 (a) should be construed in conjunction with § 276 (a),[3] which provides that an assessment may be made without regard to the statute of limitations in "the case of a false or fraudulent return with intent to evade tax or of a failure to file a return . . . ." In my judgment, a taxpayer who files a return on one form rather than another because the Commissioner directs him to do so cannot be charged with the "failure" contemplated by the statute. See *Stockstrom* v. *Commissioner,* 88 U. S. App. D. C. 286, 190 F. 2d 283; *Balkan Nat. Ins. Co.* v. *Commissioner,* 101 F. 2d 75. *Commissioner* v. *Lane-Wells Co.,* 321 U. S. 219, cited by the Court, is inapposite because the taxpayer there was required by applicable statutes and regulations to file two returns and had filed only one. Compare *Germantown Trust Co.* v. *Commissioner,* 309 U. S. 304. Under the decision of the Court, the Commissioner may revoke his rulings retroactively so long as his action does not constitute an "abuse of discretion." I see no reason why that power should not also be subjected to the three-year limit established by Congress.

I also disagree with the Court's holding that the Commissioner may properly tax in the year of receipt the full amount of petitioner's prepaid membership dues. The Commissioner seeks to justify that course under the "claim of right" doctrine announced in *North American Oil* v. *Burnet,* 286 U. S. 417. However, that doctrine, it seems to me, comes into play only in determining whether the treatment of an item of income should be influenced by the fact that the right to receive or keep it

---

[3] 53 Stat. 87, 26 U. S. C. § 276 (a).

is in dispute; it does not relate to the entirely different question whether items that admittedly belong to the taxpayer may be attributed to a taxable year other than that of receipt in accordance with principles of accrual accounting. See *Brown* v. *Helvering,* 291 U. S. 193, where these two problems were involved and were treated as distinct. The collection of taxes clearly should not be made to depend on the vicissitudes of litigation with third parties in which the taxpayer may be engaged. That is quite a different thing, however, from holding that the Commissioner may force taxpayers to abandon reasonable and accurate methods of accounting simply because they do not reflect advance receipts as income in the year received. Under § 41 of the Internal Revenue Code of 1939,[4] the income of the taxpayer is to be determined "in accordance with the method of accounting regularly employed in keeping the [taxpayer's] books," unless "the method employed does not clearly reflect" the taxpayer's income. Under § 42,[5] items of gross income need not be reported in the taxable year in which received by the taxpayer if, "under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period." And it is clear that accrual methods of accounting may be employed. *United States* v. *Anderson,* 269 U. S. 422. The Commissioner's own regulations authorize the deferral of income in some instances.[6]

The Court, however, now by-passes the Commissioner's "claim of right" argument, and rests its decision instead on the ground that the "pro rata allocation of the member-

---

[4] 53 Stat. 24, 26 U. S. C. § 41.

[5] 53 Stat. 24, 26 U. S. C. § 42.

[6] Regulations 111, §§ 29.22 (a)–17 (2) (*a*) (bond premiums), 29.42–4 (long-term contracts). See also I. T. 3369, 1940–1 Cum. Bull. 46 (prepaid subscriptions to periodicals); I. T. 2080, III–2 Cum. Bull. 48 (1924) (advance receipts from sales of tickets for tourist cruises).

ship dues in monthly amounts is purely artificial and bears no relation to the services which petitioner may in fact be called upon to render for the member," so that it cannot say that in doing what he did the Commissioner exceeded the limits of his discretion. I do not understand this, because the Commissioner does not deny—as, indeed, he could not—that the method of accounting used by the taxpayer reflects its net earnings with considerably greater accuracy than the method he proposes. Nor does he urge that the taxpayer's accounting system defers income in a manner or to an extent that would make the Government unreasonably dependent on the continued solvency of the taxpayer's business. And no other circumstances have been shown which would justify application of the statutory exception.

On both of these grounds I would reverse the judgment below.