W. Palmer DIXON et al., Plaintiffs-Appellants,

Helen J. Gernon and Helene G. Hirson, as Executrices of the Last Will and Testament of Frank E. Gernon, Deceased, Helen J. Gernon, Plaintiffs,

v.

The UNITED STATES of America, Defendant-Appellee.

No. 451, Docket 28752.

United States Court of Appeals Second Circuit.

Argued April 30, 1964.

Decided June 19, 1964.

Bernard E. Brandes, of Stroock &. Stroock & Lavan, New York City (Sanford Saideman, New York City, of counsel), for plaintiffs-appellants.

Robert Arum, Asst. U. S. Atty., for Southern District of New York, New York City (Robert M. Morgenthau, U. S. Atty., of counsel), for defendant-appellee.

Before MOORE, SMITH and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

The sole question presented by this appeal is whether profits attributable to original issue discount on "commercial paper," defined as short-term, non-interest-bearing commercial obligations, are taxable at ordinary income or capital gains rates under the Internal Revenue Code of 1939.[1]

The relevant facts in this case are free from dispute. Thus, the plaintiffs' amended complaint reveals that during the taxable year 1952, the taxpayers or their spouses or decedents were partners in the investment firm of Carl M. Loeb Rhoades & Co., a member of the New York and American Stock Exchanges. At various times during the year, the partnership purchased thirty-three short-term, non-interest-bearing notes, either directly from the obligor corporation, or through agents or dealers. The notes bore maturity dates ranging from 190 to 272 days from the date of issue, and all were issued at discounts, which varied between 2⅜% and 3¾% of face value. At the close of the taxable year, only thirteen notes remained on hand and unmatured; the remaining twenty had been sold during the year—all more than six months after they had been purchased.

In preparing their income tax returns for 1952, each partner reported as a long-term capital gain his distributive share of the profits realized upon the twenty notes that had been sold, and no account.

1. Unlike the 1954 Code, see *infra*, the Internal Revenue Code of 1939 did not contain any specific provisions with respect to original issue discount. The relevant statutory sections, therefore, are merely §

22, which included "interest" in its general definition of "gross income," and § 117, which provided for capital gains treatment upon the sale or exchange of a "capital asset."

was taken of the thirteen which remained on hand. Rejecting these computations, the Commissioner determined deficiencies totalling some $369,329.65. In place of the taxpayers' method of analysis, he computed the income earned by virtue of the discount for each day that each of the thirty-three notes were held by the partnership. This earned discount per day was then multiplied by the number of days that the notes were held, and the resulting amount was considered as earned interest, and afforded ordinary income treatment. Having paid the deficiencies assessed, the taxpayers brought this action for a refund.

On cross-motions for summary judgment below, Judge Levet found that the Commissioner had properly interpreted the relevant provisions of the 1939 Code, in viewing the profit derived from the discount as equivalent to interest income, and accordingly taxing it at ordinary income rates. Although recognizing that § 1232 of the Internal Revenue Code of 1954 specifically provides for ordinary-income treatment in original issue discount situations, he concluded that this section was merely intended to clarify the existing law, rather than representing an abrupt departure from the earlier practice. As a result, Judge Levet awarded judgment to the Commissioner, and the taxpayers have brought this appeal.

We should note at the outset that a narrow issue is presented for our decision. It is the taxpayers' contention that the original issue discount resulted in a long-term capital gain, which could only be realized on the twenty notes which were sold; the Commissioner, on the other hand, asserts that the discount produced interest income which must properly be computed for the period that all of the notes were held by the partnership. This dispute as to whether capital gains or ordinary income treatment was appropriate, moreover, is the only issue that divides the parties. Thus, no question has been raised as to the propriety of taxing the individual partners for notes held by the partnership, and the taxpayers have conceded that if the dis-

count *did* represent ordinary income, that income was realized upon each of the thirty-three notes held, and was not dependent upon a sale.

Turning, then, to the single question in dispute, we find the approach adopted by the Commissioner and upheld below to be plainly correct. Indeed, unless form rather than substance is to carry the day, such a conclusion seems inescapable in light of the facts here conceded. Thus, we are aware of no meaningful distinction, and the taxpayers have offered none, between the discount income involved here and the more traditional forms of "interest on indebtedness," defined in Deputy v. duPont, 308 U.S. 488, 498, 60 S.Ct. 363, 84 L.Ed. 416 (1940), as "compensation for the use or forbearance of money." Whatever superficial or mechanical differences in form, both are designed to accomplish the same objective—the production of income for "the hire of money." And this factual identity between discount income, as employed here, and interest income seems both crucial and apparent. In the terms of an illustration offered by the Commissioner, there should be no distinction for tax purposes between a case in which $10,000 is advanced by a lender in exchange for a $10,000 note, payable in one year with interest at 6%, and the original issue discount situation, in which the same $10,000 would be loaned in exchange for a note in the face amount of $10,600. When these transactions are reduced to their essentials, it becomes plain that in both cases, the lender has advanced $10,000, and has received that amount in return, plus $600 in interest. It would seem arbitrary to insist, as do the taxpayers, that significant tax consequences should hinge upon whether this $600 sum is separately stated as interest or is included in the face amount of the note. It has been repeatedly emphasized that our taxing statutes are intended to take cognizance of realities and not mere appearances or facades. See, e. g., Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 266–267, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958).

Without denying the force of this reasoning, the taxpayers argue, however, that capital gains treatment is compelled by the decision in Commissioner v. Caulkins, 144 F.2d 482 (6th Cir. 1944). The taxpayer there paid some $15,043.33 over a ten-year period for an "accumulated installment certificate" which returned him $20,000 when the certificate was redeemed. Although recognizing that the certificate was an "evidence of indebtedness" and that the increment in value represented "consideration paid for the use of the amounts paid in," the Court of Appeals for the Sixth Circuit held that the difference between the amount paid and the sum received on redemption was taxable as a long-term capital gain.

We are willing to agree for present purposes that the notes involved here are analogous to the certificate at issue in Caulkins. But in light of our conclusion that original issue discount income is indistinguishable from interest income, we are of the opinion that the Caulkins case was wrongly decided. In so holding, we find ourselves in agreement with the greater number of courts to consider the problem. See Commissioner v. Morgan, 272 F.2d 936 (9th Cir. 1959); Rosen v. United States, 288 F.2d 658 (3rd Cir. 1961); United States v. Harrison, 304 F.2d 835 (5th Cir. 1962), cert. denied, 372 U.S. 934, 83 S.Ct. 881, 9 L.Ed.2d 765 (1963); Pattiz v. United States, 311 F.2d 947 (Ct.Cl.1963). Contra, Midland-Ross Corp. v. United States, 214 F.Supp. 631 (N.D., Ohio 1963). Thus, in Jaglom v. Commissioner, 303 F.2d 847 (2d Cir. 1962), where we also found that a sum which actually represented interest income must be taxed as such, we noted that "before the 1954 Code specifically covered the subject, most courts held that the excess of the amount received at the maturity of a non-interest bearing note or investment certificate issued at a discount over the cost thereof, being in the nature of an interest return on the capital invested, was ordinary income." 303 F.2d at 849.

Furthermore, we agree with Judge Levet in his conclusion that the explicit provisions for ordinary income treatment in § 1232 of the 1954 Code do not require a different result with respect to pre-1954 obligations. The Senate Committee Report on § 1232, indeed, evidences a clear congressional intention to clarify— rather than revise—the existing law. Thus, the Report notes that "[u]nder § 117(f) of present law, when a corporate * * * bond * * * is retired the transaction is treated as a sale or exchange. There is some uncertainty as to the status of proceeds in these transactions, i. e., as capital gain or as interest income where the bond or other evidence of indebtedness has been issued at a discount. (See I.T. 3486, 1941–2 C.B. p. 76, as compared with Com'r v. Caulkins, 144 F.2d 482). In these cases, *that part of the amount received on a sale or exchange which may represent a partial recovery of discount on original issue is a form of interest income* and in fact is deductible as an interest payment by the issuing corporation. Effective with respect to bonds issued after December 31, 1954, *the House bill removed doubt in this area* by providing that any gain realized by the holder of a bond attributable to the original issue discount will be taxed as ordinary income." 3 U.S.Code Cong. & Ad.News 1954, at p. 4745. (Emphasis supplied.)

We find, in sum, that both reason and authority support the position adopted by the Commissioner. The taxpayers, however, urge as a final argument that the Commissioner's acquiescence in the Caulkins decision at the time it was rendered precludes him from taking a different position in the present case, even if we agree that ordinary income treatment was proper. We find this contention to be entirely without merit. The Supreme Court has noted that "[t]he doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law." Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 183, 77 S.Ct. 707, 709, 1 L.Ed.2d 746 (1957). It would seem unduly harsh to hold that a mistaken interpretation of law by the Com-

missioner of Internal Revenue forever bars the United States government from correcting such an error, and subsequently collecting the taxes rightfully due.

The judgment is affirmed.