**PENINSULA MOTOR CLUB**

v.

**The UNITED STATES.**

No. 385–75.

United States Court of Claims.

Dec. 15, 1976.

Stanley W. Rosenkranz, Tampa, Fla., atty. of record, for plaintiff.

Charles E. Auslander, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D. C., for defendant. Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS and BENNETT, Judges.

ON DEFENDANT'S MOTION AND
PLAINTIFF'S CROSS–MOTION
FOR SUMMARY JUDGMENT

COWEN, Chief Judge:

Plaintiff, Peninsula Motor Club (Peninsula), brings this action for the recovery of income taxes and accompanying interest paid for the taxable year ended December 31, 1968. Upon audit by the Internal Revenue Service, plaintiff's income for its 1970 and 1971 taxable years was increased and its net operating losses for those years decreased, such that plaintiff's operating loss carrybacks to 1968, under section 172 of the Internal Revenue Code were reduced. As a result, additional income taxes of $51,183.22, plus statutory interest of $11,583.05 were assessed against plaintiff for the taxable year 1968. The total amount of the additional assessment was $62,766.27, which was paid about October 23, 1974. Plaintiff filed a timely claim for refund and thereafter instituted this action.

Peninsula is a Florida corporation formed in 1936. As an automobile club, it provides the following services to both its first-year and renewal members: (1) 24-hour nationwide emergency road service; (2) bail bonds for minor traffic violations and reimbursement for some legal fees; (3) Film "Club" and Mailing Service, automobile license procurement, a monthly newspaper and fully warranted tires and batteries. For tax purposes, plaintiff is considered a "membership organization" within the meaning of section 456(e) of the Internal Revenue Code, in that it (1) is "organized without capital stock of any kind," and (2) distributes no part of its net earnings to any member. I.R.C. § 456(e)(3)(A–B).

Since plaintiff qualifies for and has elected to be treated as a "membership organization" within the meaning of section 456, it is entitled to report membership dues received as "prepaid dues income" and to spread the income ratably over the period in which membership services are provided, rather than reporting such income in the year received.

Plaintiff has two categories of membership—"Associate" and "Master" members. During the taxable years 1970 and 1971, it charged each new "Master Member" $25 for the first year and $18 for each renewal year. "Associate Members" were charged $12.50 for the first year and $9 for each renewal year. There is no difference whatever between the services plaintiff provided for a first year member and for a renewal member in his category.[1]

The Internal Revenue Service determined that the $7 difference between the first year charge and the renewal charge for "Master Members" and the similar $3.50 difference for "Associate Members" did not constitute "prepaid dues income" within the meaning of section 456. Therefore, the Service included these additional charges as income in the year in which plaintiff received them, rather than permitting the taxpayer to defer portions of such income under section 456 as it had done for many previous years. The result was the additional assessment for which plaintiff seeks recovery in this action.

Plaintiff's bylaws recognize a difference between first year membership dues and renewal (annual) dues in the manner in which dues are paid and in the manner in which dues are fixed by its Board of Directors. However, plaintiff has no provision in its bylaws, applications for membership, or sales brochures which refers to an "initiation fee" or which describes the higher first year payments as anything other than as "dues." If, for any reason, Peninsula cancels or refunds a portion of the first year membership fee, it returns a chronologically ratable portion of the entire $25 or $12.50 dues, and does not carve out and retain any portion of the payment for an initiation fee.

---

1. There is, furthermore, no difference in the services provided "Master" and "Associate" members. However, "Associate" memberships are available only to the spouse or dependent minor children of a "Master" member. *See* Plaintiff's Brief, p. 13.

Peninsula justifies its higher dues for the first year members on the ground that first year members cost the club more than renewal members. Plaintiff's records indicate that it experienced the following costs with respect to each first year membership:

| | Master | Associate |
|---|---|---|
| Commissions | $5.00 | $2.50 |
| Bonuses to Salesmen | ------ | ------ |
| AAA (national) dues | .25 | .25 |
| Accident Policies | 1.40 | 1.40 |
| Road Services | 2.36 | 2.36 |
| Maps and Supplies | .69 | .69 |
| Florida Explorer | .22 | .22 |
| Administrative Cost | 7.60 | 7.60 |
| Total | $17.52 | $15.02 |

It experienced the following costs with respect to each renewal membership:

| | Master | Associate |
|---|---|---|
| Commissions | $10.00 | $5.00 |
| Bonuses to Salesmen | 4.00 | 2.00 |
| AAA (national) dues | .25 | .25 |
| Accident Policies | 1.40 | 1.40 |
| Road Services | 2.36 | 2.36 |
| Maps and Supplies | .69 | .69 |
| Florida Explorer | .22 | .22 |
| Administrative Cost | 7.60 | 7.60 |
| Total | $26.52 | $19.52 |

The issue before the court is a narrow one, more limited in scope than questions of deductions or exemptions applicable to tax-exempt organizations. We are here concerned only with determining when admittedly taxable income should be taken into account for tax purposes and reported in the returns of a taxpayer, which is a "membership organization" within the purview of section 456 of the Code.

Section 456 provides that "membership organizations" may prorate, over the life of the membership period, any "prepaid dues income" received from the members. "Prepaid dues income" is defined in Internal Revenue Code section 456(e)(1) as follows:

* * * any amount (includible in gross income) which is received by a membership organization in connection with, and is directly attributable to, a liability to render services or make available membership privileges over a period of time which extends beyond the close of the taxable year in which such amount is received.

The only question before the court is whether the additional membership fees charged to first year members should be considered "prepaid dues income."

The Government advances two closely related arguments in support of its position that the additional first year charges should not be so treated and therefore, should be reported in the year received. Both these arguments concern the extent of equivalence, which must be shown between the dues charged and the services rendered in return.

The first argument centers about the *timing* of the dues and benefits, it being the Government's position the taxpayer cannot prevail, because the salesmen's commissions are incurred only "at the outset of membership" and not "over the membership period." The second argument concerns the *amount* of dues and benefits. The Government maintains that since new members pay more in dues, but receive the same services as renewal members, the additional first year charges are more "in the nature" of an "enrollment fee" or an "initiation" charge. The premise underlying these arguments is that unless there is a very close correspondence—a matching between membership dues income and expenses incurred in behalf of members—the dues are not "directly attributable" to the privileges and cannot be considered prepaid dues income.

We disagree with the Government's premise and think that the legislative history of section 456 negates both of the Government's contentions. Section 456 was added to the Internal Revenue Code in 1961, after the Supreme Court's decision in *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 1147 (1957). In that and subsequent decisions, the Supreme Court required a club to show that membership dues closely correlated to the period over which membership privileges were provided before the club could prorate its dues. *See also American Automobile Association v. United States,* 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961).

When Congress subsequently passed section 456, it did so with the express intent of overruling the Supreme Court's decisions.

This intent of Congress was shown in the report of the House Ways and Means Committee, H.Rep. No. 381, 87th Cong., 1st Sess.; 1961–2 Cum.Bull. 390, 391:

The problem with which this bill is concerned is substantially similar to the problem dealt with in the case of the prepaid subscription income provision enacted in 1958. In *Automobile Club of Michigan v. Commissioner (353 U.S. 180* [77 S.Ct. 707, 1 L.Ed.2d 1147]) * * * in 1957, the Supreme Court held that membership dues received one year in advance by that automobile club must be reported for income tax purposes for the year of receipt rather than over the 12-month period to which the dues related. The 1939 Code (and also the 1954 Code) provides that income is to be computed in accordance with the method of accounting regularly employed by the taxpayer in keeping his books, unless this method does not clearly reflect income. The Supreme Court denied this automobile club the right to spread the income over the period to which the dues related *primarily on the grounds that the services which the club must render for the member might not be spread in the same manner as a pro rata allocation of the club dues.*

The pro rata allocation of annual membership dues over the 12 months to which the dues relate *may not precisely match the periods in which services are performed for individual members. Nevertheless,* your committee believes that spreading dues income of these clubs in this manner will *more clearly approximate* the period in which the services are rendered than reporting the income for the year of the receipt of the membership dues.

To more accurately reflect generally accepted accounting principles in this case, therefore, your committee has concluded that in the case of membership dues it is desirable to provide in the code (sec. 456) that this income, subject to certain restrictions, may at the election of the taxpayer be reported on a pro rata basis over the period to which the income relates, that is, over the period in which the services to which the dues relate are required to be performed. [Emphasis added.]

We think it sufficiently clear from the above language that Congress passed section 456 specifically to permit a club to prorate dues without showing more than a general correlation between the dues and the period in which membership services are performed. Moreover, we think there are additional factors which warranted plaintiff's treatment of the additional first year charges as "prepaid dues income." In the first place, the requirement of a perfect correlation between the amount of dues and the cost of services actually received by any members would produce unworkable and perhaps absurd results. Membership organizations which operated under such a requirement would be faced with the almost impossible task of proving that any member's dues exactly covered the cost of the privileges he received. Clubs with older or nonresident members paying lower dues would be faced with extremely difficult tax accounting and reporting problems. Possibly, the Internal Revenue Service would have to audit virtually every membership organization which sought to defer dues under section 456. Surely Congress did not intend such a result when it enacted section 456.

In the second place, the language of section 456 itself appears broad enough to encompass the additional fees, required to pay salesmen's commissions within the concept of "prepaid dues income." Section 456(e)(2) of the Code, defines liability, referred to in section 456(a) as follows:

The term "liability" means a liability to render services or make available membership privileges over a period of time which does not exceed 36 months, which liability shall be deemed to exist ratably over the period of time that such services are required to be rendered, or that such membership privileges are required to be made available.

It is undisputed that the cost incurred by plaintiff in obtaining new members was considerably higher than the cost of its

renewal membership. When it accepted the dues received from new members, there is no doubt that it became liable to "make available membership privileges" to them over a period of 12 months. Furthermore, commissions paid to salesmen are an essential element of plaintiff's liability to provide membership privileges to new members. In view of the liberal relationship which Congress sanctioned with respect to the period in which the dues are received and the period in which membership services are provided, we find that commissions and bonuses paid to salesmen are integrally related to the club's efforts to "make membership privileges available."

In the third place, we find that defendant's position is inherently inconsistent. The Government objects to the differences in costs but challenges only the differences in membership fees. Were the Government's challenges consistent with its objections, it would not permit plaintiff to defer the actual difference between the sales costs for new and renewal members. This was $9 for Master members and $4.50 for Associate members. Similarly, plaintiff would be required to deduct from its prepaid dues income the costs of commissions paid to salesmen on renewal memberships. Commissions paid by plaintiff on each renewal membership amounted to $5 per year for Master members and $2.50 per year for Associate members.

In support of its contention that the plaintiff's additional charge for first year memberships constituted an "initiation fee" rather than "dues," defendant relies on a distinction between "dues" and "initiation fees" as defined in former sections of the Code—sections 4242(a) and (b). Section 4242, which was repealed in 1965 (Pub.L. 89–44, 79 Stat. 145), defined dues for social, athletic and sporting clubs, whose exemption from tax depends upon their being solely supported by membership fees. See Treas.Reg. § 1.501(c)(7)–1(a). The repealed section is not relevant to questions concerning "membership organizations" such as plaintiff, a nonexempt taxpayer whose income is taxable in any event.

Section 456 speaks only of "prepaid dues income," a specifically defined concept which is quite different from the dues-initiation fee dichotomy which appeared in section 4242. The several cases cited by the Government concerning initiation fees are consequently irrelevant and inapplicable. *See, e. g., Knollwood Club v. United States,* 48 F.2d 971, 74 Ct.Cl. 1 (1931).

### CONCLUSION

On the basis of the facts which are not in dispute, we conclude that plaintiff has shown that the entire amount of dues which it received from its first year members during the years in suit constituted "prepaid dues income" within the meaning of section 456, and that plaintiff is entitled to a refund of the additional taxes assessed and paid as a result of the determination to the contrary by the Internal Revenue Service.

Accordingly, defendant's motion for summary judgment is denied; plaintiff's cross-motion for summary judgment is granted, and judgment is hereby rendered in favor of plaintiff for the sum of $62,766.27, plus statutory interest thereon.