STANLEY T. HINES and TEDDI B. HINES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hines v. Commissioner
Docket No. 44931-86
United States Tax Court
T.C. Memo 1989-17; 1989 Tax Ct. Memo LEXIS 17; 56 T.C.M. (CCH) 1050; T.C.M. (RIA) 89017; January 10, 1989
Robert R. Ross, for the petitioners. Daniel Morman, for the respondent. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: The issues for decision in this case are: (1) Whether petitioners realized $ 45,000 of unreported income during taxable year 1979; (2) If so, whether petitioners have, as a consequence, omitted more than 25 percent of gross income from their income tax return for 1979; (3) If there was a more than 25-percent omission from gross income, whether petitioners have precluded the application of the 6-year period for assessment of tax under section 6501(e)(1)(A) by making a statement in their 1979 income tax return which was adequate to apprise respondent of the nature and amount of the omitted item; and (4) Whether petitioners are entitled *19 to attorneys fees for prior tax court litigation for taxable year 1980. We hold that petitioners omitted more than 25 percent of gross income in 1979, and that their disclosure of income was not adequate to bar application of the 6-year period for assessment of tax. We also hold petitioners are not entitled to attorneys' fees for taxable year 1980. For taxable year 1979, respondent determined a deficiency in petitioners' Federal income tax of $ 21,568 and an addition to tax under section 6651(a)(1) of $ 4,842. Petitioners ask us to redetermine the deficiency. The parties submitted this case for decision on the stipulated record under Rule 122. FINDINGS OF FACT Petitioners
Petitioners were married individuals residing at Yardley, Pennsylvania at the time the petition was filed. They were calendar year, cash-basis taxpayers for taxable year 1979. During 1979, petitioners acquired a mineral claim lease which gave them rights to mine gold in South America. The lease was purchased from International Monetary Exchange (I.M.E.). Petitioners' lease was part of I.M.E.'s 1979 Gold for Tax Dollars program. 1979 Gold for Tax Dollars Program
An investor in the I. *20 M.E. 1979 Gold for Tax Dollars Program selected the size (in cubic meters) of his claim and the required development costs. The investor then acquired a 7-year mineral lease on property represented to contain gold reserves. To raise capital needed to develop the mineral claim, the investor authorized the grant by I.M.E. to a third party of what I.M.E. referred to as a gold option. The price of the option equaled 75 percent of the projected development costs for the property in which the investor acquired the mineral claim lease. The investor provided the remaining 25 percent of projected development costs in cash. The option holder then had the right to purchase all of the gold mined from the mineral claim lease for a set price after extraction, if in fact the investor mined gold. The investor was not obliged to mine gold. Petitioners' Participation in Gold for Tax Dollars
Petitioners participated in the Gold for Tax Dollars program by selecting a claim that would require $ 60,000 in development costs. They remitted a $ 15,000 check dated December 27, 1979, payable to I.M.E. Through I.M.E., petitioners granted the option to a third party for $ 45,000 to purchase gold *21 mined, if any, from petitioners' mineral claim lease. The mining development expenditures which would have been attributable to petitioners' mineral claim lease, if paid or incurred, would have totalled $ 60,000. This represents $ 15,000 (petitioners' cash investment of 25 percent of $ 60,000) plus $ 45,000 (proceeds from the sale of the option, or 75 percent of $ 60,000). Petitioners claimed a $ 60,000 mining development cost deduction on the applicable Schedule C attached to their 1979 federal income tax return. The parties have stipulated that the I.M.E. 1979 Gold for Tax Dollars program and petitioners' participation in the program are factually the same as the 1979 transaction in Saviano v. Commissioner,80 T.C. 955 (1983), affd. 765 F.2d 643 (7th Cir. 1985), except as to the dollar amount of investment. Respondent affirmatively alleges in his pleadings that petitioners realized $ 45,000 during taxable year 1979 from a so-called gold option which was not included in gross income stated on the return and not otherwise disclosed on the return or in a statement that $ 45,000 was received during 1979. Petitioners do not deny this allegation. *22 In the stipulation of facts filed in this case, they admit receiving the $ 45,000. Moreover, petitioners admit receiving $ 45,000 in 1979 from the so-called gold option while participating in the 1979 Gold for Tax Dollars program. Petitioners' 1979 Federal Income Tax Return
Petitioners filed their 1979 Federal income tax return with the Internal Revenue Service Center in Philadelphia, Pennsylvania on or about October 14, 1980. There is no evidence in the record to explain why the return was not filed before that date. Two Schedule C Forms were attached to petitioners' 1979 Federal income tax return. The Schedule C at issue here provides the name of petitioner Stanley T. Hines, his social security number, and the following information: Main business activity
gold mining
Product
gold
Accounting method
cash
Other expenses (specify)
mining development
expenses 60,000
Total deductions
60,000
Net Profit
(60,000)
No other information is included on the Schedule C. The Schedule C does not mention I.M.E., mineral leasing, or the Gold for Tax Dollars program. Petitioners' return includes no information about the $ 45,000 which petitioners *23 received from a third party in 1979 as a part of the Gold for Tax Dollars program. Petitioners reported $ 110,775 of gross income on their 1979 Federal income tax return. The IRS Letter Stating that the 3-Year Statute of Limitations Had Expired
Petitioners received a letter dated November 16, 1983, from Edward J. Malloy, Chief, Appeals Office, Philadelphia. The letter said respondent discontinued action concerning the 1979 deficiency because the 3-year period for assessment of tax for taxable year 1979 had expired. The letter did not mention the 6-year assessment period under section 6501(e)(1)(A). Enclosed in the letter was an audit statement for taxable year 1979 which included a $ 15,000 adjustment to income labelled "Schedule C - Gold Mining." The letter said, "You have no legal obligation to pay the deficiency shown on * * * [the audit statement]." Taxable Year 1980, Tax Court Docket No. 35779-84
After the November 16, 1983 letter from Edward J. Malloy to petitioners advising them that the period for timely assessment of 1979 taxes had elapsed, respondent issued a notice of deficiency for taxable year 1980. Petitioners timely filed a petition in this Court, *24 docket No. 35779-84. Respondent later conceded that case. The parties filed a decision document which stated there is no deficiency in income tax due from underpayment or overpayment due to petitioners for taxable year 1980. The decision document was filed before respondent issued the statutory notice of deficiency for taxable year 1979. The decision was entered on March 14, 1986. The decision document did not mention costs or attorneys fees under section 7430. Statutory Notice of Deficiency for Taxable Year 1979
The notice of deficiency regarding petitioners' 1979 taxable year was dated and mailed to petitioners on September 10, 1986. Petitioners filed their 1979 Federal income tax return on or about October 14, 1980. The 3-year statute of limitations under section 6501(a) expired on October 14, 1983. OPINION Respondent has the burden of proving that there was a 25-percent omission from gross income for the extended assessment period to apply. Reis v. Commissioner,1 T.C. 9, 13 (1942). Respondent must also prove that the omitted income was includible in the taxpayer's gross income. *25 Reis v. Commissioner, supra.
$ 45,000 of Unreported Income
Petitioners received $ 45,000 in 1979 from the Gold for Tax Dollars so-called gold option program. This Court held in Saviano v. Commissioner,80 T.C. 955 (1983), affd. 765 F.2d 643 (7th Cir. 1985), that the Gold for Tax Dollars gold option was not a true option for tax purposes. The Court also held that the proceeds from the so-called gold option were taxable income. Accordingly, we find that petitioners realized $ 45,000 of unreported income during taxable year 1979 from the so-called gold option. Thus, there has been a more than 25-percent omission from gross income for purposes of section 6501(e). Applicability of Section 6501(e)(1)
It is undisputed that the notice of deficiency was sent more than 3 years but less than 6 years after the return was filed. The general rule provides for a 3-year period for assessment of tax. Respondent contends that the 6-year period is applicable here because of petitioners' inadequate disclosure of the nature and amount of the item omitted from income. We agree. The general rule, set forth in section 6501(a), provides, *26 "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * *." Section 6501(e)(1)(A) provides an exception to the general rule stating: (A) General rule. -- If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph -- * * * (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item. Thus, the question becomes whether petitioners adequately disclosed the nature and amount of the item omitted from income which was received as a result of *27 the so-called gold options. As discussed next, we find petitioners' disclosure to be inadequate. Inadequacy of Disclosure of Nature and Amount of Omission
Once it is established that there has been a 25-percent omission from gross income, the burden of going forward shifts to petitioner. Petitioners bear the burden of proving that they adequately disclosed the nature and amount of the omitted income on their return. University Country Club, Inc. v. Commissioner,64 T.C. 460, 468 (1975). The question to be decided under section 6501(e)(1)(A) is whether petitioners carried their burden of proving that they adequately disclosed the nature and amount of the $ 45,000 omitted from gross income in the return or in a statement attached to the return. University Country Club, Inc. v. Commissioner, supra.
Whether a disclosure in the income tax return is adequate is a question of fact. Whitesell v. Commissioner,90 T.C. 702, 707-708 (1988); University Country Club, Inc. v. Commissioner, supra at 468; *28 George Edward Quick Trust v. Commissioner,54 T.C. 1336, 1346-1347 (1970), affd. per curiam 444 F.2d 90 (8th Cir. 1971). The proper application of the rule is whether an adjustment might be apparent from the face of the return to the elusive "reasonable man." University Country Club, Inc. v. Commissioner, supra at 471. Petitioners claim that their 1979 return contained adequate disclosure for purposes of section 6501(e)(1)(A)(ii). Petitioners argue that the language of section 6501(e)(1)(A)(ii) does not require a specific disclosure of the dollar amount omitted, and that the entry of $ 60,000 for "other expenses" on a Schedule C was a sufficient clue as to the existence of an omitted item. We disagree. The Schedule C contained no information other than petitioner Stanley Hines' identifying information, that the main business activity was gold mining, that the product was gold, and that there were $ 60,000 of mining development expenses. In addition to omitting the dollar amount of income, petitioners also omitted reference to the existence of the item of income. We find the disclosure to be insufficient. *29 Petitioners mistakenly rely on University Country Club, Inc. v. Commissioner,64 T.C. 460 (1975), and Colony, Inc. v. Commissioner,357 U.S. 28 (1958), which held that the taxpayers adequately disclosed the subject income on their returns such that the 3-year statute of limitations applied. In University Country Club, the taxpayer was a corporation in the business of running a country club. The taxpayer had two classes of stock, class A and class B. In lieu of a $ 250 membership, the taxpayer offered to sell one share of class B stock to potential members for $ 350. The proceeds from the sale of class B stock were properly reportable as gross income on its Federal income tax return for the year at issue. On its income tax return, the taxpayer reported the entire amount of the proceeds it received from the sale of class B stock on Schedule L in the shareholders equity section of the balance sheet. It failed to report the proceeds for the class B stock sale as taxable income. We held that the statement in the balance sheet on the return was an adequate disclosure of the omitted income at issue under section 6501(e)(1)(A)(ii). In contrast, *30 here, petitioners did not report the $ 45,000 proceeds from the gold option anywhere on the return. In Colony, Inc., the taxpayer realized income from the sale of parcels of land. The taxpayer properly reported the amount of its gross receipts from such sales, but overstated its basis in the land. The result was an understatement of gross profits realized from the land sales. The cases relied upon by petitioners for the proposition that petitioners' disclosure on the return was adequate under section 6501(e)(1)(A)(ii) involve significantly different facts. The taxpayers in both cases reported the subject amounts or the subject items on their income tax returns. In a more recent case we held that actual disclosure on a Schedule D of the transaction that produced the unreported income as a sale of stock resulting in capital gain rather than a redemption was insufficient to apprise the Commissioner of the nature and amount of any omitted income at issue under section 6501(e)(1)(A). Estate of Fry v. Commissioner,88 T.C. 1020 (1987). Here, petitioners have made no disclosure at all. Respondent's Actual Notice of the $ 45,000 Income
*31 Lacking actual disclosure, petitioners argue that the disclosure of $ 60,000 of expenses on the gold mining Schedule C was adequate disclosure of the $ 45,000 income because of the atmosphere of investigations of gold mine tax shelters. Again, petitioners argue that respondent had or should have had actual knowledge of the $ 45,000 of omitted income because of widespread investigations of gold mining tax shelters. For reasons stated next, we find that petitioners failed to establish that respondent had actual knowledge of the omitted $ 45,000 of income at or near the time that the 1979 income tax return was filed; therefore we need not address this argument. On brief petitioners claim that shortly after filing the return, petitioners were contacted for the particulars of the shelter. There is no evidence before this Court to substantiate this claim. Petitioners also cite a Wall Street Journal article about the Gold for Tax Dollars Shelter that predates the notice of deficiency. Even assuming the contents of the article to be true, we find the article to be insufficient to establish actual knowledge for purposes of petitioners' claim. Petitioners also argue that respondent's *32 actual knowledge of the omitted income is shown in the audit statement enclosed in a letter dated November 16, 1983 from Edward J. Malloy to petitioners. That audit statement does not indicate a $ 45,000 adjustment to income. Instead, it indicates an adjustment to income for Schedule C-Gold Mining of $ 15,000. The letter from Edward Malloy does not prove petitioners' claim of actual knowledge. Petitioners also claim that since the examination of their return was commenced within 3 years of the date of filing, there must have been a sufficient clue as to the existence of the omitted income. We disagree. The fact that an examination was commenced is not proof of timely actual knowledge by respondent. The statute and the regulations thereunder require that the disclosure must be on the return or on a statement attached to the return. Here, there is no disclosure whatsoever on the return or attached statement, any other information return, or any other taxpayer's returns. Accordingly, we hold that petitioners have failed to satisfy the requirements of section 6501(e)(1)(A)(ii). We find that petitioners have failed to disclose anywhere in the return, or in a statement attached *33 thereto, in a manner adequate to apprise the Secretary, the nature and amount of the omitted $ 45,000 of income. Therefore, we hold that the assessment of additional income tax for taxable year 1979 is not barred by the expiration of the 3-year period of limitations and that respondent's notice of deficiency was issued in a timely manner. November 16, 1983 Letter from Edward Malloy
Petitioners contend that they were misled by the November 16, 1983 letter from Edward Malloy. The letter said that respondent discontinued action concerning the taxable year 1979 deficiency because the 3-year period for assessment had expired. The letter also said that petitioners had no obligation to pay the deficiency shown on the attachment to the letter. Petitioners do not contend that the letter results in any consequence other than evidence of respondent's actual knowledge of the omitted income. Equitable estoppel does not bar the Commissioner from correcting a mistake of law. Automobile Club of Michigan v. Commissioner,353 U.S. 180 (1957). We also hold that the letter does not preclude the issuance of the statutory notice of deficiency for taxable year 1979 where the *34 inaccurate aspect of the IRS letter was caused by petitioners' substantial omission of income. Taxable Year 1980
Petitioners allege facts and circumstances concerning taxable year 1980. They allege that after respondent advised them that the period for timely assessment of 1979 taxes had elapsed, respondent issued a notice of deficiency for taxable year 1980 with an adjustment concerning a purported constructive disposition of gold mine property. Petitioners timely filed a petition in this Court in docket No. 35779-84. Respondent later conceded the case without advising petitioners that respondent would issue a notice of deficiency for taxable year 1979 under section 6501(e). Petitioners claim that they signed the decision document for taxable year 1980 because they believed 1979 was a closed year. However, it appears to the Court that the advisability of signing the decision document for taxable year 1980 did not depend on whether taxable year 1979 was closed. Petitioners argue that this case is merely an extension of the case involving taxable year 1980 inferring that issues relating to 1980 may be raised here. This is simply incorrect. Decisions of this Court become *35 final 90 days after the entry of decision. Rule 190. Taxpayers should have made the claim for attorneys fees relating to taxable year 1980 when that year was before the Court; specifically, it should have been before entry of the decision of February 1980 or in a manner to effectuate section 7430(e) which provides that an order awarding or denying litigation costs shall be incorporated into the decision or judgment in the case. Respondent's Determination
Respondent's determinations are presumed correct and petitioners bear the burden of proving that they are erroneous. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Petitioners present no evidence for us to redetermine respondent's determinations set forth in the notice of deficiency. Moreover, petitioners admit receiving the $ 45,000 which was not reported as income and which was the subject of respondent's adjustment. We therefore hold that respondent's determination as set forth in the notice of deficiency is correct. Additions to Tax
Section 6072(a) provides that income tax returns for calendar year individual taxpayers are due to be filed on or before the April 15th which follows *36 the close of the taxable year. Section 6651(a)(1) provides a 5-percent addition to the tax required to be shown on a return for each month for which a taxpayer fails to file a timely return. The total amount of the addition to tax under this section cannot exceed 25 percent in the aggregate. The taxpayer can be relieved of liability if he can show that such failure is due to reasonable cause and not due to willful neglect. The burden of proving reasonable cause is on petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners' Federal income tax return for taxable year 1979 was required to be filed on or before April 15, 1980. The return was not filed until October 14, 1980, about 6 months late. There is no evidence establishing that petitioners' failure to timely file was due to reasonable cause. We therefore hold that petitioners are liable for the 25-percent addition to tax pursuant to section 6651(a)(1). Section 6651(b) provides that the addition to tax is imposed on the net amount due. Finally, there is no evidence that respondent's determination is arbitrary and capricious. Accordingly, Decision will be entered for the *37 respondent.