T.C. Memo. 2009-235

UNITED STATES TAX COURT

DAVID WAYNE TAYLOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6632-08.                    Filed October 15, 2009.

David Wayne Taylor, pro se.

<u>Caroline R. Krivacka</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  This deficiency case arises from a statutory notice of deficiency respondent issued to petitioner on December 13, 2007, for the taxable years 2004 and 2005.  Respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax:

| Year | Deficiency | Additions to Tax | | |
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
|---|---|---|---|---|
| 2004 | $66,857 | $14,631.53 | $10,404.64 | $1,881.67 |
| 2005 | 21,527 | 4,547.03 | 2,020.90 | 804.72 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the issues presented for decision are:

(1) Whether petitioner received, but failed to report, income of $8,539.11 in 2004 and $19,428.25 in 2005, and if so, whether the income constitutes self-employment income;

(2) whether petitioner received, but failed to report, $268,189 in capital gains income in 2004 from a lawsuit settlement;

(3) whether petitioner is entitled to claimed net operating loss deductions in 2004 and 2005;

---

[1]Petitioner conceded that he received, but failed to report, (1) wage income of $17,800 in 2004 and $12,300 in 2005 and (2) dividend income of $219 in 2004 and $245 in 2005. In the notice of deficiency respondent determined that petitioner had unreported gross receipts from self-employment of $37,678.11 in 2004 and $63,436.25 in 2005. In the stipulation of facts respondent conceded $23,139 of petitioner's self-employment gross receipts for 2004 and $44,008 of self-employment gross receipts for 2005, reducing the amount of omitted self-employment gross receipts in dispute to $14,539.11 for 2004 and $19,428.25 for 2005. In respondent's brief respondent conceded an additional $6,000 of self-employment gross receipts for 2004, reducing the contested amount for 2004 to $8,539. Respondent also conceded that petitioner is not liable for the addition to tax for failure to pay estimated tax under sec. 6654 for 2004.

(4) whether petitioner is liable for the additions to tax pursuant to section 6651(a)(1) and (2) for 2004 and 2005; and

(5) whether petitioner is liable for the estimated tax addition imposed pursuant to section 6654 for 2005.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts, with the accompanying exhibits, are incorporated by this reference. Petitioner resided in Tennessee when he filed his petition.

Petitioner did not file his Federal income tax returns for 2004 and 2005, and respondent prepared substitutes for returns for both years on December 10, 2007. Petitioner received wages of $17,800 in 2004 and $11,100 in 2005 from Sunwest P.E.O. of Florida VII, Inc. (Sunwest). He received wages of $1,200 from TLR in Bonita, Inc. (TLR), in 2005. Petitioner made no payments on his 2004 and 2005 income tax liabilities other than the tax withheld from wages he received from Sunwest in 2004 and 2005 and from TLR in 2005; this amounted to $1,828 in 2004 and $1,318 in 2005.

Petitioner owned and operated Common Place Management, Inc. (CPM), his wholly owned S corporation, in 2004 and 2005. The corporation did not file any tax returns for the 2004 and 2005 tax years. During 2004 and 2005 petitioner transferred funds from CPM's bank account to his personal accounts.

Petitioner also held an unspecified interest in VIP, Inc. The record does not disclose whether VIP, Inc., is an S corporation or whether it filed tax returns for the years at issue.

A.  Reconstruction of Petitioner's Gross Receipts

Petitioner did not keep adequate books and records, and respondent reconstructed petitioner's gross receipts using the bank deposits method.

1.  Bank Deposits 2004

Petitioner maintained checking account No. xxxx6225 and savings account No. xxxx3713 at AmSouth Bank in 2004.  The AmSouth account No. xxxx6225 was exclusively petitioner's account until September 17, 2004, when his wife was added as a coowner of the account.  Petitioner deposited $167,493.79 into the AmSouth account in 2004.

In the notice of deficiency respondent excluded the following deposits to AmSouth account No. xxxx6225 from petitioner's gross receipts in 2004:

| Deposit | Amount |
|---|---|
| Return of capital from VIP, Inc. | $41,500.00 |
| Lawsuit proceeds | 68,188.65 |
| Transfers | 24,087.76 |
| Returned checks | 10,851.30 |
| Petitioner's net wages | 14,611.00 |
| Interest | 15.99 |
| Total amount excluded in 2004 | 159,254.70 |

In the notice of deficiency respondent determined that petitioner deposited gross receipts totaling $8,239.09 into the AmSouth account No. xxxx6225 in 2004.

Petitioner held account No. xxxx9851 at Jax Federal Credit Union in 2004 after he married Elizabeth Taylor. He and his wife deposited $37,490.35 into the Jax account in 2004. In the notice of deficiency respondent excluded from petitioner's gross receipts $8,051.28 attributable to the direct deposit of Mrs. Taylor's wages and 5 cents attributable to interest. In the notice of deficiency respondent determined that petitioner deposited gross receipts of $29,439.02 into the Jax account in 2004.

In the stipulation of facts respondent conceded that an additional $23,139 deposited in the Jax account is not included in petitioner's gross receipts in 2004. In respondent's brief respondent conceded that an additional $6,000 deposited into the Jax account is not included in petitioner's gross receipts in 2004. Thus respondent asserts petitioner deposited $300.02 of gross receipts into the Jax account in 2004.

Respondent asserts petitioner had unreported gross receipts totaling $8,539.11 that were deposited into the AmSouth and Jax accounts in 2004.

2. <u>Bank Deposits 2005</u>

Petitioner held account No. xxxx9851 at Jax Federal Credit Union in 2005. He and his wife deposited $276,248.22 into the Jax account in 2005.

In the notice of deficiency respondent excluded the following deposits from the computation of petitioner's gross receipts in 2005:

| <u>Deposit</u> | <u>Amount</u> |
|---|---|
| Personal injury settlement | $111,355.98 |
| Transfers | 68,700.00 |
| Petitioner's wife's wages | 22,689.33 |
| Petitioner's wages | 10,043.00 |
| Interest/dividends | 23.66 |
| Total amount excluded in 2005 | 212,811.97 |

In the stipulation of facts respondent conceded that an additional $44,008 deposited into the Jax account in 2005 is attributable to Mrs. Taylor and is not included in computing petitioner's gross receipts. Respondent asserts that petitioner deposited gross receipts totaling $19,428.25 into the Jax account in 2005.

B. <u>Receipt of Lawsuit Settlement Proceeds</u>

In 2004 petitioner received $268,189 pursuant to a settlement agreement with Rose & Ken, Inc., a Florida corporation owned by his brother, Kendall Taylor, and his sister-in-law, Rose Taylor. The settlement proceeds were not paid to petitioner from Rose & Ken, Inc., for personal injury or illness. They resulted from a lawsuit that originated between his brother and his

parents. Petitioner and two other siblings subsequently became parties to the litigation.

The litigation began after petitioner's brother purchased the family's marina business from their parents, who believed that the business was being sold to all their children in equal parts.

Petitioner was not responsible for any loans or financing related to the purchase of the family business. His brother Kendall entirely financed the purchase of the family business and never transferred a share of the business to petitioner and his other siblings.

Petitioner's brother filed suit against petitioner's parents relating to the transfer of the real property. The parents counterclaimed against the brother with allegations of fraud, misrepresentation, and breach of the duty of fair dealing. The parents alleged in the counterclaims that the brother improperly failed to transfer portions of the business to petitioner and his siblings as the parents had intended.

The settlement petitioner received was to resolve the counterclaims brought in the lawsuit, and petitioner received the funds as damages for never having received the share of the business his parents intended for him to have.

C.   Claimed Net Operating Losses

Petitioner was involved in several businesses and corporations before the years at issue.  In his petition he claimed net operating loss deductions for 2004 and 2005 but did not identify the entity purportedly giving rise to the losses or the amounts thereof.  However, at trial petitioner stated that the business which incurred the losses was Volusia Fertilizer & Chemical, Inc. (Volusia), a Florida S corporation he had owned in prior years.  Petitioner bought Volusia in 1999 for $48,000. Volusia filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for 2001, 2002, and 2003.  The returns reported net operating losses (NOLs) of $74,611 for 2001, $45,576 for 2002, and $46,204 for 2003.  Petitioner's 2001 return reported an NOL of $61,382 resulting from a "Prior Year NOL" of $69,440 offsetting income of $8,058.  Petitioner's 2002 return reported an NOL of $126,135 resulting from current year losses of $56,705 and the "Prior Year NOL" of $69,440 offsetting income of $10. His 2001 and 2002 returns contained a statement waiving the right to carry back the losses.  Volusia's 2003 income tax return was examined, and the Internal Revenue Service (IRS) allowed the claimed loss of $46,204 by issuing a no-change letter.

Petitioner did not establish the amount of income in 2002 or 2003 that was offset by the Volusia NOL and did not establish his basis in the stock and debt of Volusia in 2004 or 2005.

OPINION

Generally, the Commissioner's determinations set forth in the notice of deficiency are presumed correct, and the taxpayer bears the burden of showing the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a), however, shifts the burden of proof to the Commissioner with respect to a factual issue affecting the tax liability of a taxpayer who meets certain conditions.

Petitioner has neither claimed nor shown that he satisfied the requirements of section 7491(a) to shift the burden of proof to respondent with respect to any factual issue affecting the deficiencies in his taxes. Accordingly, petitioner bears the burden of proof. See Rule 142(a).

Section 7491(c) provides that the Commissioner will bear the burden of production with respect to the liability of any individual for additions to tax. "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty, addition to tax, or additional amount". Swain v. Commissioner, 118 T.C. 358, 363 (2002); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The Commissioner, however, does not have the obligation to introduce evidence regarding reasonable cause. Instead, the taxpayer bears the burden of proof with regard to that issue. Higbee v. Commissioner, supra at 446-447.

A.   Bank Deposits

Gross income means all income from whatever source derived, including income derived from business.  Sec. 61.  Petitioner conducted business through CPM, an S corporation the income of which flowed through to petitioner, its sole shareholder.  CPM did not file a Federal income tax return in 2004 or 2005, and petitioner failed to maintain records reflecting his business income in 2004 and 2005.

Respondent reconstructed petitioner's income using the bank deposits method.  Absent some explanation, petitioner's bank deposits represent income subject to tax, and the Commissioner's use of the bank deposits method of income reconstruction has long been sanctioned by the courts.  See DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  The Commissioner need not show a likely source of the income when using the bank deposits method, but he must take into account any nontaxable items or deductible expenses of which he had knowledge.  See Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964).

On the basis of deposits into petitioner's bank accounts, respondent contends that petitioner received, but failed to report, certain gross receipts from self-employment of $8,539.11 in 2004 and $19,428.25 in 2005.  In computing petitioner's unreported income using the bank deposits method, respondent

excluded (1) petitioner's wage income; (2) $41,500 in return of capital from VIP, Inc.; (3) petitioner's wife's directly deposited wage income; (4) personal injury settlement proceeds; (5) nontaxable transfers; and (6) returned checks. Respondent removed additional deposits attributable to petitioner's wife. Respondent asserts that the remaining deposits are income from petitioner's business activities conducted through CPM and are therefore subject to income tax.

One of the two issues raised in the petition relates to the amount of gross receipts determined by respondent. Specifically, petitioner alleges that some of the funds deposited were the return of capital. Respondent allowed $41,500 as the nontaxable return of capital from petitioner's business entities. Petitioner has not stated how much additional income should be excluded as return of capital. Furthermore, petitioner provided no information or documentation to support allowing a larger amount to be excluded as return of capital.

We hold that petitioner received income of $8,539 in 2004 and $19,428.25 in 2005 from conducting CPM's business. However, income from conducting the business of an S corporation is not subject to self-employment tax. Ding v. Commissioner, 200 F.3d 587, 588 (9th Cir. 1999) (S corporation passthrough items are not included in calculating self-employment tax liability under section 1402(a)), affg. T.C. Memo. 1997-435; Veterinary Surgical

Consultants, P.C. v. Commissioner, 117 T.C. 141, 145 (2001)
("Section 1366 permits use of S corporation passthrough items
only in calculating tax liability under chapter 1, not tax
liability under chapters 21 and 23--in which the Federal
employment tax provisions for FICA and FUTA are located."), affd.
sub nom. Yeagle Drywall Co. v. Commissioner, 54 Fed. Appx. 100
(3d Cir. 2002).  Moreover, an officer who performs substantial
services for a corporation and who receives remuneration in any
form for those services is considered an employee.  Veterinary
Surgical Consultants, P.C. v. Commissioner, supra at 144-145.
We hold that the deposits of the income from CPM into
petitioner's bank accounts are wages paid to him.

B.    Lawsuit Settlement Proceeds

Respondent's position regarding this issue is that
petitioner received, but failed to report, $268,189 of taxable
lawsuit settlement proceeds in 2004.

Proceeds derived from litigation are subject to taxation
unless specifically awarded for personal physical injury or
physical sickness.  Secs. 61(a), 104(a)(2).  Petitioner received
$268,189 from Rose & Ken, Inc., in 2004.  Respondent's revenue
agent treated the income as the proceeds from the sale of
property in which the petitioner had no basis.  The entire amount
was included in petitioner's income, but long-term capital gain
treatment was allowed in the notice of deficiency.

Petitioner did not raise in his petition any challenge to the inclusion of this income, the taxation of the income at the capital gains rate, or the determination that he had no basis to reduce the amount of gain. However, petitioner argued for the first time at trial that he had a sufficient basis in the proceeds, which were received pursuant to the lawsuit settlement, to result in a large loss rather than a capital gain.

Petitioner asserted that his brother bought the business from his parents on behalf of himself and other siblings and that his brother obtained the financing for the purchase. Petitioner did not personally provide any funds for the purchase of the business.

Petitioner's parents apparently intended for petitioner and his siblings to receive equal shares of their business. The brother and his wife filed suit against petitioner's parents in an attempt to obtain title to realty that may or may not have been included in the original sale of the business by the parents. Petitioner's parents then counterclaimed for the failure to distribute ownership of the business to petitioner and his siblings, who subsequently were added as parties to the suit.

Petitioner submitted two documents at trial to support his contention that he had basis in his interest in the business. The most telling document was an answer filed by his parents in response to the complaint filed by petitioner's brother. The

answer includes counterclaims relating to petitioner and the other siblings.

According to the factual allegations set forth in the answer to the complaint and confirmed by petitioner, the cause of action for the lawsuit was the failure to transfer interests in the business to petitioner and his siblings. The net result of the lawsuit was not an award of a portion of the company's ownership. The settlement was a payment of $268,189 in lieu of any interest in the business. Petitioner was awarded the amount to compensate for the fact that his brother failed to transfer to petitioner his share of the business. Petitioner did not sell his share of the business for $268,189 but essentially received damages for never having received his share of the business. Petitioner did not purchase a share of the business, nor did he receive it as a gift from his brother or his parents. He has clearly not established that he had any basis to reduce the amount of gain. The lawsuit settlement proceeds did not constitute the proceeds from the sale of the business interest but rather damages for an interest never received. Accordingly, we conclude that the entire amount is subject to tax, and we sustain respondent's determination that petitioner had long-term capital gain of $268,189 in 2004.

C.    Claimed Net Operating Loss Deductions

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any claimed deduction.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  As a part of that burden, a taxpayer must substantiate the amounts of his claimed deductions.  A taxpayer is required to maintain records sufficient to establish the amount of any deduction claimed.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Respondent contends that petitioner failed to prove he is entitled to his claimed net operating loss deductions for 2004 and 2005 because he has not established his basis in Volusia and therefore the NOLs cannot be carried forward to 2004 and 2005 absent clear information showing that petitioner had a sufficient basis remaining in those years.  While petitioner testified that he thought he had bought the Volusia business for about $48,000 and indicated he probably put another $10,000 into the business property, he submitted no documentary evidence to support his testimony.

The term "net operating loss" is defined in section 172(c) to mean the excess of allowable deductions over gross income.  Section 172(a) allows a net operating loss deduction for the aggregate of net operating loss carrybacks and carryovers to the taxable year.  Section 172(b)(1)(A) generally provides that the

period for an NOL carryback is 2 years and that the period for an NOL carryover is 20 years.

A taxpayer may not claim net operating losses from an S corporation in excess of the sum of the shareholder's bases in stock and debt of the S corporation. Sec. 1366(d)(1). Before a shareholder in an S corporation can claim an NOL, the shareholder must determine his adjusted basis in the S corporation. To have a basis in an S corporation, a shareholder must make an actual economic outlay. See Miller v. Commissioner, T.C. Memo. 2006-125 (and cases cited therein).

While petitioner failed to identify in his petition the entity purportedly giving rise to the NOL, he subsequently stated that the business was Volusia, his Florida S corporation in prior years. Volusia filed Forms 1120S for 2001, 2002, and 2003 and reported losses for each year. Volusia's 2003 return was examined, and the IRS sustained the claimed loss in that year.

At no time during the examination or after the filing of the petition did petitioner establish his basis in Volusia. Volusia's tax returns do not support the conclusion that petitioner had a sufficient basis to claim net operating loss deductions in the years at issue. Accordingly, even assuming that Volusia's returns are correct and it incurred losses each year before the years in issue, petitioner cannot carry an NOL

forward to 2004 or 2005 absent clear information showing that he had a sufficient basis in the business.

Petitioner claimed the NOL deductions on his 2001 and 2002 income tax returns. A taxpayer claiming an NOL deduction for a taxable year must file with the tax return for that year a concise statement setting forth the amount of the NOL deduction claimed and all material and pertinent facts, including a detailed schedule showing the computation of the NOL deduction. Sec. 1.172-1(c), Income Tax Regs. A taxpayer may elect to relinquish the carryback period with respect to an NOL for any taxable year, thereby using the loss to offset income only in future years. Sec. 172(b)(3). To carry forward or carry back net operating losses, the taxpayer must prove the amount of the net operating loss carryforward or carryback and that his gross income in other years did not offset that loss. Sec. 172(c); Jones v. Commissioner, 25 T.C. 1100, 1104 (1956), revd. and remanded on other grounds 259 F.2d 300 (5th Cir. 1958).

Petitioner did not allege any amount of the NOL deduction to which he believes he was entitled in 2004 and 2005. He did not provide a detailed schedule showing the computation of the NOL during the examination, nor was such a schedule attached to his 2001 or 2002 income tax return. Petitioner asserts that because Volusia's 2003 return reported a loss, and because his own 2001 and 2002 returns claimed an NOL, he should be permitted to carry

forward unspecified losses to 2004 and 2005, the years at issue herein. Petitioner's 2001 and 2002 returns did contain a statement waiving the right to carry back the losses.

A tax return is not evidence of the truth of the facts stated in it. Lawinger v. Commissioner, 103 T.C. 428, 438 (1994). Thus the Commissioner's failure to disallow a loss claimed on a return for one year does not estop the Commissioner from disallowing an NOL carryover of that loss to a future year. Rollert Residuary Trust v. Commissioner, 80 T.C. 619, 636 (1983), affd. on another issue 752 F.2d 1128 (6th Cir. 1985). Each taxable year stands alone, and the Commissioner may challenge in a succeeding year what was condoned or agreed to in a former year. Auto. Club of Mich. v. Commissioner, 353 U.S. 180 (1957); Black v. Commissioner, T.C. Memo. 2007-364.

In summary, although respondent acknowledges that the petitioner owned an S corporation that claimed losses, petitioner on this record has not met his burden of proving that he is entitled to claim a specific amount of net operating loss deduction for 2004 or 2005.

D. Section 6651(a)(1) and (2) Additions to Tax

Petitioner did not assign error in his petition with respect to respondent's determinations of the additions to tax imposed for petitioner's failure to file his Federal income tax returns and to pay the taxes due for 2004 and 2005. Apparently,

petitioner has conceded them. See <u>Swain v. Commissioner</u>, 118 T.C. at 363-365. In any event, even if we assume that petitioner is considered to have raised the issues in his brief testimony at the trial, respondent has met his burden of production by showing that petitioner was required to file his Federal income tax returns for 2004 and 2005 and pay the taxes due, and he failed to do so. Moreover, with respect to section 6651(a)(2), for each year respondent prepared a substitute for return which meets the requirements of section 6020(b). See <u>Wheeler v. Commissioner</u>, 127 T.C. 200, 208-210 (2006), affd. 521 F.3d 1289 (10th Cir. 2008).

Finally, on this record petitioner has neither alleged nor shown that there was reasonable cause for not filing his income tax returns and paying the taxes due for those years. Accordingly, we hold that petitioner is liable for the additions to tax under section 6651(a)(1) and (2) for 2004 and 2005.

E. <u>Section 6654 Additions to Tax</u>

Section 6654(a) imposes an addition to tax for a taxpayer's failure to make estimated tax payments calculated with reference to four required installment payments of the taxpayer's estimated tax liability. Sec. 6654(c)(1). Each required installment of estimated tax is equal to 25 percent of the required annual payment. Sec. 6654(d)(1)(A). The required annual payment is the lesser of (1) 90 percent of the tax shown on the individual's

return for that year (or, if no return is filed, 90 percent of his or her tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return.[2]  Sec. 6654(d)(1)(B).

Petitioner had no Federal income tax liability for 2003.  As previously indicated, respondent conceded the estimated tax addition for 2004.  Petitioner made no estimated tax payments for 2005 but had $1,318 in taxes withheld from his wages during the year.   We hold that, if $1,318 is less than 100 percent of petitioner's tax for 2004 or 90 percent of his tax for 2005 computed under Rule 155, which appears unlikely, then petitioner is liable for the addition to tax pursuant to section 6654 for 2005.

We have considered the arguments raised by both parties, and, to the extent not discussed, we conclude that they are irrelevant or without merit.

To reflect the parties' concessions and our disposition of the disputed issues,

Decision will be entered

under Rule 155.

_____

[2]If an individual's adjusted gross income shown on the previous year's return exceeds $150,000, a higher percentage may apply.  See sec. 6654(d)(1)(C).